## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIRAMAR FIREFIGHTERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>IROBOT CORPORATION, COLIN M. ANGLE, and ALISON DEAN,<br><br>     Defendants. | Case No.: 1:19-cv-12536-DJC<br><br><u>CLASS ACTION</u> |
| JEROME CAMPBELL, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>IROBOT CORPORATION, COLIN M. ANGLE, and ALISON DEAN,<br><br>     Defendants. | Case No.: 1:19-cv-12483-DJC<br><br><u>CLASS ACTION</u> |

## MEMORANDUM OF LAW IN SUPPORT OF MONICA SAGAL'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND <u>APPROVAL OF SELECTION OF COUNSEL</u>

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

PROCEDURAL HISTORY.................................................................................................. 2

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ....................................................................................................................... 6

    A.    Consolidation of the Related Actions is Appropriate.................................................... 6

    B.    Appointing Movant as Lead Plaintiff Is Appropriate.................................................... 8

        1.    The Procedure Required By the PSLRA................................................................. 8

        2.    Movant Satisfies the Lead Plaintiff Requirements of the PSLRA .......................... 9

            a.    Movant Has the Largest Financial Interest in the Relief Sought by the Class........................................................................................................... 10

            b.    Movant Otherwise Satisfies Rule 23.................................................................. 11

                i.    Movant Satisfies the Typicality Requirement.......................................... 12

                ii.    Movant Fulfills the Adequacy Requirement............................................ 13

    C.    Approving Lead Plaintiff's Choice of Counsel Is Appropriate.................................... 14

CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*In re Bank of Boston Corp. Sec. Litig.*,
762 F. Supp. 1525 (D. Mass. 1991) ................................................................................ 12

*City of Bristol Pension Fund v. Vertex Pharms.*,
2012 U.S. Dist. LEXIS 180974 (D. Mass. Dec. 21, 2012)........................................... 11

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ...................................................................................................... 10

*Fields v. Wolfson*,
41 F.R.D. 329 (S.D.N.Y. 1967) ....................................................................................... 7

*Francisco v. Abengoa, S.A.*,
No. 15-cv-6279 (ER), 2016 U.S. Dist. LEXIS 68145 (S.D.N.Y. May 24, 2016) .................. 14

*Garber v. Randell*,
477 F.2d 711 (2d Cir. 1973)............................................................................................. 7

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982)....................................................................................................... 12

*Gilliam v. Fidelity Mgmt. & Research Co.*,
Case No. 04-11600NG, 2005 U.S. Dist. LEXIS 10478 (D. Mass. May 3, 2005) .................... 7

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996)................................................................................ 8, 11

*Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*,
354 F. Supp. 2d 18 (D. Mass. 2000) ............................................................................... 7

*Inchen Huang v. Depomed, Inc.*,
289 F. Supp. 3d 1050 (N.D. Cal. 2017) ........................................................................ 15

*Isaacs v. Musk*,
No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018), ......... 14

*In re Lernout & Hauspie Sec. Litig.*,
138 F. Supp. 2d 39 (D. Mass. 2001) ................................................................. 10, 11, 12

*Levin v. Res. Capital Corp.*,
No. 15-cv-7081 (LLS), 2015 U.S. Dist. LEXIS 162377 (S.D.N.Y. Oct. 5, 2016) ................ 15

*Lowinger v. Global Cash Access Holdings, Inc.*,
Case No. 08 cv 3516 (SWK), 2008 U.S. Dist. LEXIS 49169 (S.D.N.Y. June 26, 2008)......... 7

*In re Milestone Scientific Sec. Litig.*,
    183 F.R.D. 404 (D.N.J. 1998) ...................................................................... 13

*Polat v. Regulus Therapeutics, Inc.*,
    No. 3:17-cv-00182-BTM-RBB, 2017 U.S. Dist. LEXIS 177872 (S.D. Cal. Oct. 26, 2017).. 15

*Pope v. Navient Corp.*,
    No. 17-cv-8373 (RBK/AMD), 2018 U.S. Dist. LEXIS 17340 (D.N.J. Feb. 2, 2018)............ 15

*Priest v. Zayre Corp.*,
    118 F.R.D. 552 (D. Mass. 1988)..................................................................... 12

*Seguro v. Servicio de Salud De Puerto Rico v. McAuto Sys. Group, Inc.*,
    878 F.2d 5 (1st Cir. 1989) ............................................................................. 7

*Tehrani v. Biogen, Inc.*,
    2015 U.S. Dist. LEXIS 156001 (D. Mass. Nov. 18, 2015) ...................................... 13

*In re Tesla, Inc. Sec. Litig.*,
    No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018)........... 14

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) .................................................................... 11

**Statutes**

15 U.S.C. § 78 ................................................................................... passim

 **Rules**

Fed. R. Civ. P. 23........................................................................... passim

Fed. R. Civ. P. 42............................................................................. 6

Movant Monica Sagal ("Movant") respectfully submits this Memorandum of Law in support of her motion for: (1) consolidation of the above-captioned related actions (the "Actions"); (2) appointment as Lead Plaintiff in the Actions pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (3) approval of his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") Lead Counsel.

## INTRODUCTION

Presently pending before the Court are two securities class action lawsuits[1] brought on behalf of all persons or entities that (1) purchased iRobot Corporation ("IRBT") common stock between November 21, 2016 and October 22, 2019, inclusive (the "Class Period"). Plaintiff alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The PSLRA directs the Court to appoint as Lead Plaintiff the movant or group of movants who have demonstrated the "largest financial interest in the litigation" and also meets the typicality and adequacy prongs of Fed. R. Civ. P. 23 ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Movant satisfies both requirements.

*First*, Movant has sustained losses totaling approximately $110,349.52. Accordingly, Movant has a substantial economic interest in directing the litigation and recovering the losses she and the Class have suffered. Movant's losses are, to the best of her knowledge, the largest among purported Class members seeking appointment as Lead Plaintiff. Movant is unaware of any other

---

[1] The Actions are entitled *Miramar Firefighters; Pension Fund v. iRobot Corporation et al.* No. 1:19-cv-12536-DJC (D. Mass) (the "*Miramar* Action"), and *Jerome Campbell v. iRobot Corporation et al.* No. 1:19-cv-12483-DJC (D. Mass) (the "*Campbell* Action"). Although the *Campbell* Action has a lower-case number than the *Miramar* Action in this District, the *Campbell* Action was filed subsequently to the *Miramar* Action in the Southern District of New York, prior to being transferred to this Court.

class members who have filed an application for appointment as Lead Plaintiff who have sustained greater losses.[2]

*Second*, Movant meets the typicality and adequacy requirements of Rule 23 because her claims are typical of those of absent Class members and because Movant will fairly and adequately represent the interests of the Class. In addition to demonstrating the largest financial interest in the outcome of the litigation, Movant understands the commitments required of a lead plaintiff and has confirmed that she is ready, willing, and able to oversee the vigorous prosecution of this Action.

Pursuant to the PSLRA, the Lead Plaintiff selects her choice of counsel, subject to Court approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Movant has selected the law firm of Levi & Korsinsky as Lead Counsel. Levi & Korsinsky has extensive experience successfully litigating securities class actions such as this and possess the resources necessary to vigorously pursue this litigation on behalf of the putative Class.

For the reasons summarized herein and discussed more fully below, Movant's motion should be granted in its entirety.

## PROCEDURAL HISTORY

The *Miramar* Action was filed on October 24, 2019 and the *Campbell* Action was filed on November 7, 2019, both in the United States District Court for the Southern District of New York. On December 9, 2019, the *Campbell* Action was transferred to this Court, followed by the *Miramar* Action transferring to this Court on December 18, 2019. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i),

---

[2] The losses suffered by Movant are not the same as its legally compensable damages. Measuring the latter is often a complex exercise and is premature at this stage of the litigation. The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(B) and based upon reference to information concerning the current market for the Company's securities. Movant's transactions in iRobot securities are set forth in Certifications attached as Exhibit A to the Declaration of Shannon L. Hopkins in Support of this Motion ("Hopkins Decl.").

notice that a class action had been initiated against Defendants was published on October 24, 2019 on *Business Wire*, a widely circulated national business-oriented wire service (the "Notice"). The Notice advised members of the proposed Class of their right to move the Court for appointment as Lead Plaintiff. *See* Hopkins Decl. Ex. C. Movant is a member of the proposed Class (*see* Hopkins Decl. Ex. A) and is filing her motion within the sixty-day period following publication of the notice pursuant to Section 21D of the PSLRA.

### STATEMENT OF FACTS[3]

iRobot is a global consumer robot company with a portfolio of products focused on indoor and outdoor cleaning applications. ¶ 11. The Company is incorporated in Delaware with its principal offices located at 8 Crosby Drive, Bedford, Massachusetts 01730. *Id.* The Company's common stock trades on the NASDAQ, under ticker symbol "IRBT." *Id.*

iRobot designs and builds robots to assist with household tasks and has sold more than 25 million robots worldwide. ¶ 15. The Company's most popular product line is its autonomous robotic vacuum cleaners, which the Company first introduced with the Roomba Vacuuming Robot in 2002. *Id.* iRobot's products, including the Roomba line, purport to feature proprietary technologies and advanced concepts in cleaning, mapping, and navigation. *Id.*

In November 2016, the beginning of the Class Period, iRobot announced the first of two upcoming acquisitions, the acquisition of the iRobot-related distribution business of Tokyo-based Sales on Demand Corporation ("SODC"). ¶ 16. iRobot completed the purchase of SODC on April 11, 2017 for $18 million- equal to the book value of the acquired assets. ¶ 19. The Company stated that the acquisition would "better enable iRobot to maintain its leadership position and accelerate

---

[3] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Miramar* Complaint") filed in the *Miramar* Action. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Miramar* Complaint. The facts set forth in the *Miramar* Complaint are incorporated herein by reference.

the growth of its business in Japan through direct control of pre- and post-sales market activities including sales, marketing, branding, channel relationships and customer service." *Id*. Then, on July 25, 2017, iRobot announced that it would be acquiring privately-held Robopolis SAS ("Robopolis"), based in Lyon, France, for $141 million. ¶ 20. Robopolis had been an exclusive distributor of iRobot products since 2006 and the Company's largest distributor in Europe, the Middle East, and Africa (the "EMEA" region). *Id*.  In the press release announcing the acquisition, iRobot Co-Founder, Chairman, and Chief Executive Officer Colin M. Angle stated, "[a]t this stage in the Western European market evolution, and the growth opportunity it presents, we feel a more direct go-to-market strategy is necessary to continue driving adoption of robots for the home." *Id*. The press release further stated that the Ropobolis acquisition would "further enhance the company's distribution network, ensure global brand consistency and better serve the needs of European consumers while driving continued growth in Western Europe through a consistent approach to all market activities including sales, marketing, branding, channel relationships and customer service." *Id.*

Preceding those announcements and throughout the Class Period, iRobot reported explosive, double-digit revenue growth and reaffirmed its positive outlook, attributing its strong performance to growing demand for the Roomba line of products, expanded gross margin due to distributor acquisitions, greater brand awareness, and technological innovation. ¶ 17. The truth behind the Company's revenue numbers was that it was engaging in channel-stuffing—the deceptive practice of sending retailers and distributors in a company's distribution channel more products than those retailers would ordinarily purchase from the company or be able to sell to the public during a given period, enabling the company to book those as sales in the current quarter or

year. *Id*. Here, iRobot was stuffing the channel through its control of the two distributors it had acquired in order to continue its deceptive scheme. *Id.*

The truth was revealed to the public on April 23, 2019 when iRobot surprised the market by announcing quarterly revenues that were below analyst expectations and also revealed surging inventory levels. ¶ 31. Specifically, the Company reported DII of 140 for the three months ended March 30, 2019, compared to DII of 101 for the three months ended March 31, 2018. Inventory also rose to $181 million as of March 30, 2019, up from $112 million in April 2018. *Id*. On this news, iRobot's stock price fell from $130.57 per share on April 23, 2019, to $100.42 per share on April 24, 2019 on unusually high trading volume—a decline of over 23% in one trading day. ¶ 32.

On July 23, 2019, after the market closed, iRobot cut its full-year earnings forecast.  ¶ 33. Specifically, fiscal year 2019 revenue guidance was lowered from a range between $1.28 billion and $1.31 billion, to a range between $1.2 billion and $1.25 billion, and earnings per share guidance was lowered from a range between $3.15 and $3.40 to a range between $2.40 and $3.15. *Id*. Following this news, iRobot's stock price fell from $89.63 per share on July 23, 2019, to $74.51 per share on July 24, 2019 on unusually high trading volume—a decline of nearly 17% in one trading day. *Id*.

Then, after the market closed on October 22, 2019, iRobot issued a press release reporting third quarter 2019 financial results. ¶ 34. iRobot cut the high end of its revenue expectations for the year, from $1.25 billion to $1.21 billion, and said it rolled back price increases after a "suboptimal" customer response. *Id*.  Tellingly, the Company reported increased inventory levels once again, with third quarter 2019 ending inventory of $248 million or 149 DII compared to the $161 million or 113 DII a year prior. *Id*.  On this news, iRobot's stock price fell from $54.03 per

share on October 22, 2019, to $49.06 per share on October 23, 2019 on unusually high trading volume—a decline of over 9% in one trading day. *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements, or omitted material information known to Defendants necessary to make the statements not false and misleading, when made. ¶ 30. Specifically, Defendants misrepresented the reason for iRobot's acquisitions of SODC and Robopolis, which was to control the Company's largest distributors so that Defendants could inflate sales and revenue figures by stuffing the channel. *Id.* iRobot further misled investors by repeatedly telling them throughout the Class Period that the Company was seeing continued double-digit revenue growth, and by attributing the growth to increased demand for the Roomba, when in reality, Defendants were engaging in channel-stuffing to artificially boost sales. *Id.*  Furthermore, Defendants misstated that the Company's channel inventory levels had not changed and would not change dramatically from quarter to quarter or year over year, when in fact iRobot was deliberately stuffing the channel in order to claim false revenue growth. *Id.*

## ARGUMENT

### A.     Consolidation of the Related Actions is Appropriate

Rule 42(a) of the Federal Rules of Civil Procedure provides, in relevant part, that:

If actions before the court involve a common question of law or fact, the court may:

1) join for hearing or trial any or all matters at issue in the actions;
2) consolidate the actions; or
3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42 (a). Consolidation pursuant to Fed. R. Civ. P. 42(a) is proper where, as here, the actions involve common questions of law and fact and consolidation would avoid unnecessary delay. *See Gilliam v. Fidelity Mgmt. & Research Co.*, 2005 U.S. Dist. LEXIS 10478, at *4 (D.

Mass. May 3, 2005) (citing *Seguro v. Servicio de Salud De Puerto Rico v. McAuto Sys. Group, Inc*., 878 F.2d 5, 8 (1st Cir. 1989)).

While consolidation falls within this Court's discretion, consolidation here will not only conserve judicial resources, it will also benefit all parties in the various Actions. Courts have recognized that class action shareholder suits like the related Actions here are particularly suited to consolidation pursuant to Fed. R. Civ. P. 42 because their consolidation expedites pretrial proceedings, reduces case duplication, avoids the harassment of parties and witnesses from inquiries in multiple proceedings and minimizes the expenditure of time and money by all persons concerned. *See Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973); *see also Howard Gunty Profit Sharing Plan v. CareMatrix Corp.,* 354 F. Supp. 2d 18, 22 (D. Mass. 2000) (consolidation appropriate where "[t]he Complaints [] involve common questions of law or fact.); *Lowinger v. Global Cash Access Holdings, Inc*., 2008 U.S. Dist. LEXIS 49169, at *2-6 (S.D.N.Y. June 26, 2008) ("consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports."). Consolidating shareholder class actions like the related Actions not only simplifies pretrial discovery motions, class action issues and clerical and administrative duties, but also reduces the confusion that may result from prosecuting related class actions separately. *Id*.

Moreover, consolidating the related Actions also "would serve the purpose of avoiding needless duplication of time, effort and expense on the time, effort and expense on the part of the parties and the court in the conduct of pretrial discovery proceedings and of the trial itself." *Fields v. Wolfson*, 41 F.R.D. 329, 330 (S.D.N.Y. 1967). It would also enable the proceedings to be expedited and make for economy and convenience generally in the administration of the litigation. In fact, "serious prejudice could result to the parties from a failure to consolidate." *Id*.

Here, there is no doubt that common questions of fact and law exist between the related Actions. The Actions are class actions brought pursuant to the Exchange Act on behalf of the public shareholders of iRobot that seek to recover losses sustained as a result of Defendants' alleged materially false and misleading statements. Therefore, common issues of fact and law predominate and the requirements for consolidation pursuant to Fed. R. Civ. P. 42(a) are satisfied.

### B.    Appointing Movant as Lead Plaintiff Is Appropriate

#### 1. <u>The Procedure Required By the PSLRA</u>

The PSLRA has established a procedure governing the appointment of a lead plaintiff "in each private action arising under . . . [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1), (a)(3)(B)(i).

*First*, the plaintiff who files the initial action must publish a notice to the class, within twenty days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4 (a)(3)(A)(i). Here, the Notice was published on *Business Wire* on October 24, 2019.[4] Hopkins Decl. at Ex. C. Within sixty days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4 (a)(3)(A)-(B).

*Second*, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

---

[4] The statute requires that notice be published "in a widely circulated business-oriented publication or wire service." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996).

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice . . .

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4 (a)(3)(B)(iii). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As discussed below, Movant has complied with the procedural prerequisites of the PSLRA, and has what is, to the best of her knowledge, the largest financial interest in the litigation of any other class member(s) seeking appointment as Lead Plaintiff. Movant is also unaware of any unique defenses that Defendants could raise against her. Therefore, Movant is entitled to the presumption that she is the most adequate plaintiff to represent the Class and, as a result, should be appointed Lead Plaintiff in the Actions.

2.    **Movant Satisfies the Lead Plaintiff Requirements of the PSLRA**

Movant timely moved this Court to be appointed Lead Plaintiff on behalf of all members of the Class. Movant submitted a signed certification stating that she reviewed the Complaint and is willing to serve as a representative on behalf of the putative Class, pursuant to 15 U.S.C. § 78u-4(a)(2). *See* Hopkins Decl. at Ex. A. In addition, Movant has selected and retained experienced and competent counsel to represent her and the putative Class. *See* Hopkins Decl. Ex. D (Firm Résumé of Levi & Korsinsky).

9

Accordingly, Movant satisfies the requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have her application for appointment as Lead Plaintiff and selection of Counsel, as set forth herein, considered and approved by the Court.

### a. *Movant Has the Largest Financial Interest in the Relief Sought by the Class*

The Court is to presume that the most adequate plaintiff is the movant with "the largest financial interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). *See also In re Lernout & Hauspie Sec. Litig*., 138 F. Supp. 2d 39, 43 (D. Mass. 2001) (courts should presume that "the member of the purported class with the largest financial stake in the relief sought is the most adequate plaintiff") (quoting H.R. Conf. Rep. No. 104-369, at 33-34 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731)).

Under the PSLRA, damages are calculated based on: (i) the difference between the purchase price paid for the units and the average trading price of the units during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the units and the average trading price of the units between the date when the misstatement was corrected and the date on which the plaintiff sold its units, if it sold its units before the end of the 90-day period. 15 U.S.C. §78u-4(c).

As evidenced by the accompanying Loss Chart, (Hopkins Decl. at B), Movant suffered an estimated loss of $110,349.52 when excluding losses not incurred pursuant to the drops alleged in the Complaint. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005). Movant has a significant financial interest in this case and is unaware of any other applicant for lead plaintiff that has sustained greater financial losses in connection with transactions in iRobot securities during the Class Period. Therefore, Movant has the "largest financial interest in the relief sought by the class," satisfying the first PSLRA prerequisite for appointment as lead plaintiff and, as further

demonstrated *infra*, should be appointed as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). *Lernout*, 138 F. Supp. 2d at 43; *Greebel*, 939 F. Supp. at 59 ("the statute erects a rebuttable presumption that the most capable plaintiff is the person with the largest financial interest in the relief sought by the class, [who] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure") (internal quotation omitted).

### b.   *Movant Otherwise Satisfies Rule 23*

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed. *See City of Bristol Pension Fund v. Vertex Pharms*., 2012 U.S. Dist. LEXIS 180974, at *10 (D. Mass. Dec. 21, 2012) ("In deciding a motion to serve as lead plaintiff, a court need only make findings as to the typicality and adequacy of the proposed lead plaintiff. These findings need only be preliminary.") (citing *In re Tronox, Inc. Sec. Litig*., 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009)).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff.

### i.    *Movant Satisfies the Typicality Requirement*

Typicality under Rule 23(a)(3) requires that the lead plaintiff's claim be aligned with the claims of absent class members and is demonstrated by a showing that the movant's claims are based on the same legal theories as the claims of the putative class. *Lernout*, 138 F. Supp. 2d at 46 ("The plaintiffs' burden in proving typicality requires that the named plaintiffs' claims arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class.") (citing *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991)). To meet this burden, Movant need not show that her claims are identical to absent class members' claims. *Id.* ("Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.") (citing *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988)). It is enough if her situation shares common issues of law or fact. *See Lernout*, 138 F. Supp. 2d at 45.[5]

Movant satisfies the typicality requirement of Rule 23 because, just like all other class members, Movant: (1) transacted in iRobot securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby. Thus, Movant's claims are typical, if not identical, to those of other members of the proposed class since all the claims arise out of the same course of events and are based on the same legal and remedial theories. Additionally, Movant is not subject to any unique defenses, and there is no evidence of any conflicts between Movant and the other members of the Class.

---

[5] Although not relevant to the instant motion, a finding of typicality frequently supports a finding of commonality. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158, n. 13 (1982) (noting that the typicality and commonality requirements tend to merge).

Movant therefore satisfies the required prima facie showing of the typicality requirements of Rule 23 for purposes of this Motion.

### ii. Movant Fulfills the Adequacy Requirement

Movant is also an adequate representative for the Class. A representative party is adequate under Rule 23(a)(4) if: (1) the party's counsel is qualified, experienced and generally able to conduct the proposed litigation and (2) the party does not have interests antagonistic to those of the class. *Tehrani v. Biogen, Inc.*, 2015 U.S. Dist. LEXIS 156001, at *9 (D. Mass. Nov. 18, 2015) ("Plaintiff also, as a preliminary matter, appears capable of adequately protecting the interests of the class, in that plaintiff possesses common interests and an absence of conflict with the class members and plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation.") (internal quotations omitted).

Movant will more than adequately represent the interests of the putative Class. Not only is there no evidence of conflict between the interests of Movant and those of the other members of the putative Class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial losses he suffered as a result of the wrongful conduct alleged in the Actions. *See In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (Plaintiff's "financial stake in the litigation provides an adequate incentive for [Plaintiff] to vigorously prosecute the action."). Indeed, Movant has already taken significant steps demonstrating that she recognizes, and will protect, the interests of the Class including: (1) executing a certification detailing her Class Period transactions and expressing willingness to serve as Class representative; (2) moving this Court to be appointed Lead Plaintiff; and (3) retaining competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner. Therefore, Movant will prosecute the Actions vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, she is, therefore, the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead these Actions.

## C. Approving Lead Plaintiff's Choice of Counsel Is Appropriate

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has selected Levi & Korsinsky as Lead Counsel.

As set forth in the accompanying firm résumé (Hopkins Decl. Ex. D), Levi & Korsinsky is a highly accomplished firm that is currently acting as lead counsel in a number of federal securities actions and has achieved many multi-million-dollar recoveries for investors. *See See Isaacs v. Musk*, No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 200717, at *20 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018) (noting Levi & Korsinsky "is experienced in securities fraud litigation and has been appointed Lead Counsel in other securities class actions."); *Francisco v. Abengoa, S.A.*, No. 15-cv-6279 (ER), 2016 U.S. Dist. LEXIS 68145, at *21 (S.D.N.Y. May 24, 2016) (noting that given "Levi & Korsinsky's track record, the Court, like many others in this Circuit before it, concludes that the firm is qualified to serve as lead counsel of the class"); *Levin v. Res. Capital Corp.*, No. 15-cv-7081 (LLS), 2015 U.S. Dist. LEXIS 162377, at *4 (S.D.N.Y. Oct. 5, 2016) (appointing Levi Korsinsky as lead counsel and noting that it is "a firm

which is well qualified and has successfully served as lead counsel or co-lead counsel in numerous complex securities class actions"); *Pope v. Navient Corp.*, No. 17-cv-8373 (RBK/AMD), 2018 U.S. Dist. LEXIS 17340, at *13–14 (D.N.J. Feb. 2, 2018) (appointing Levi & Korsinsky as lead counsel as it "is clearly capable of handling this matter—the firm has extensive experience in private securities litigation and has received numerous favorable judgments in its past representations."); *Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1055 (N.D. Cal. 2017) (appointing Levi Korsinsky as lead counsel); *Polat v. Regulus Therapeutics, Inc.*, No. 3:17-cv-00182-BTM-RBB, 2017 U.S. Dist. LEXIS 177872, at *3 (S.D. Cal. Oct. 26, 2017) (same).Thus, this Court may be assured that in the event that Movant's Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court consolidate the Actions, appoint Movant as Lead Plaintiff in the Actions, and approve Movant's selection of Levi & Korsinsky as Lead Counsel.

Dated: December 23, 2019                    Respectfully submitted,

/s/*Shannon L. Hopkins*
Shannon L. Hopkins (BBO# 657485)
**LEVI & KORSINSKY, LLP**
1111 Summer Street, Suite 403
Stamford, Connecticut 06905
Tel. (203) 992-4523
Fax: (212) 363-7500
shopkins@zlk.com

*Counsel for Movant and Proposed Lead Counsel
for the Class*

15

## CERTIFICATE OF SERVICE

I, Shannon L. Hopkins, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on December 23, 2019.

Dated: December 23, 2019                    */s/Shannon L. Hopkins*
                                            Shannon L. Hopkins

16