**Plaintiff's Exhibit A: Plaintiff's Response to Defendants' Exhibit A (Chart Titled "Challenged Statements And Why They Are Not Actionable")**

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| 200 | September 13, 2017 – Morgan Stanley Conference [Tab 2 at 11][3] <br><br> Analyst: "How are you differentiating your product between some of the new competitors that are coming in, in the United States?"[4] <br><br> Alison Dean: "So our products, from a price and performance perspective, are really offering the best value proposition. Again, we have multiple offerings on a premium scale. [1] ***And what we found with the competitors to date is that the combination of the price point they're coming in at and the features, functionality and, ultimately, the quality of the experience for the consumers is not resonating.*** As we went into the holiday season last year, again, we had the Hoovers, the Bissells, Black + Deckers that were making a big push. They did get onto retail shelves for the holiday season. But their performance was not very good, and we ended up seeing increased | [1] | • Opinion: Ms. Dean's statement that competitors' products were not "resonating" with consumers in the context of describing iRobot's RVC products as superior is a statement of opinion. There are no particularized facts showing that this opinion was not sincerely held at the time it was made. (*See* Br. Section II.B.) <br><br> • Not False Or Misleading: There are no particularized allegations that, as of September 13, 2017, competitors' products were "resonating" with consumers. (*See* Br. Section II.A.) | • Not Opinion/Actionable Opinion: Dean's statement that "we found" that competitors' products were "not resonating" with consumers is not an opinion because it does not use any opinion qualifiers (*e.g.*, "I think") and expresses certainty or describes existing facts. Even if an opinion, this statement is actionable because Dean omitted material, known facts regarding the impact of new competition on iRobot's store shelf space and sales that conflicted with her positive statements. (*See* Opp. Br. Section III.C.4; CAC ¶ 201). <br><br> • False and Misleading: Contrary to this statement, Defendants knew (and were greatly concerned) at this time that new cheaper competition was in fact "resonating" with consumers given these competitor products' similar features, functionality and, ultimately, the quality of the experience to that of Roombas, but at a much lower price point, as demonstrated by internal market research and sales data accessible to and reviewed by Defendants, which showed that at that time iRobot was increasingly losing sales and store shelf space to its competitors. (*See* Opp. Br. Section III.C.1; CAC ¶ |

---

[1] This column is copied from Exhibit A to Defendants' Motion to Dismiss briefing, ECF No. 78-1 ("Defendants' Ex. A"), with some exceptions where Plaintiff has added certain important context (primarily, analysts' questions that Defendants were responding to in their alleged misstatements), which was omitted in Defendants' Ex. A. Plaintiff has also corrected certain typographical or other errors in some of the statements. As set forth in Defendants' Ex. A, the bracketed numbers indicate the beginning of each alleged false or misleading statement and corresponds to the bracketed Entry No. in the second column in the chart.

[2] This column sets forth Plaintiff's response to Defendants' arguments as to why a challenged misstatement is not actionable, as further set forth in the cited sections of Plaintiff's brief in opposition to Defendants' Motion to Dismiss submitted herewith (Opp. Br.).

[3] As set forth in Defendants' Ex. A, "Tab _" refers to the Appendix submitted with Defendants' Motion to Dismiss briefing, ECF No. 79.

[4] In addition to this analyst's direct question that prompted Dean's misstatement here, Defendants' Ex. A omits certain other important context for this statement that Plaintiff pointed out in the CAC—specifically, Dean's prior discussion with analysts at this conference in response to their questions about the new competition facing iRobot, wherein she noted "the buzz [] about SharkNinja coming into the market" that same month and then proceeded to downplay such emerging competition. *See* CAC ¶¶ 101, 200 & Tab 2 at 5-6.

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | orders from our retailers because our products were doing so well versus those new entrants in the market. And again, I think it's a combination of the price points and the functionality, the value, the quality that we offer the consumers and the experience." | | | 201). |
| 202 | October 25, 2017 – 3Q17 Earnings Call [Tab 3 at 5]<br><br>Colin Angle:  [2] "*Demand from U.S. retailers for our robots increased during the last quarter.* [3] *We continue to gain space, exposure and momentum in the market, driving higher full year U.S. revenue expectations for the second time this year, even with the availability of new competitive products.*" We always expected a low-end U.S. market to emerge over time. This should be good for the robot vacuum cleaning category because it will help drive awareness. Continuing to execute against our premium strategy will ensure ongoing growth for iRobot and robot vacuum cleaners." | [2] | • Not False Or Misleading. (*See* Br. Section II.A.) | • False and Misleading: Contrary to this statement, cheaper, new competition was already diminishing demand for iRobot's products at this time.  Even if literally true, this statement was misleading because Angle knew but failed to disclose materially adverse competitive trends undermining this positive assurance, including iRobot's declining store shelf space and sales due to new competition.  (*See* Opp. Br. Section III.C.1; CAC ¶¶ 205-06). |
| | | [3] | • Puffery/Optimism: Mr. Angle's statement that "we continue to gain space, exposure and momentum in the market" is a statement of corporate optimism. This statement is general and does not offer any details about what "space," "exposure" or "momentum" was being gained such that a reasonable investor would find it unimportant to the total mix of information. (*See* Br. Section II.B.)<br><br>• Opinion. (*See* Br. Section II.B.)<br><br>• Forward-Looking Statement: (*See* Br. Section II.C.) | • Not Puffery/Optimism: Angle's statement that iRobot "*continue[s] to gain* space, exposure and momentum in the market" is a concrete, verifiable representation of fact regarding iRobot's position in the RVC market in the face of increasing new competition, which, when read in context, was not unimportant to a reasonable investor. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 205-06).<br><br>• Not Opinion/Actionable Opinion: This statement is not an opinion because it does not use any opinion qualifiers (*e.g.*, "I think") and expresses certainty or describes existing facts.  Even if an opinion, this statement is actionable because Angle omitted material, known facts regarding the impact of new competition on iRobot's store shelf space and sales that conflicted with his positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 205-06).<br><br>• Not Forward-Looking/Protected by Safe Harbor: Angle's statement that iRobot "*continue[s] to gain* space, exposure and momentum in the market" is a |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | | | | representation of present fact regarding iRobot's market performance versus its competitors. Moreover, even if the statement is forward-looking, it is not protected by the Safe Harbor because it was not accompanied by meaningful cautionary language (including in that the potential risk warned of had already materialized) and was made with actual knowledge of its falsity. (*See* Opp. Br. Section III.C.2; CAC ¶¶ 205-06). |
| 203 | October 25, 2017 – 3Q17 Earnings Call [Tab 3 at 8]<br><br>Analyst: "Colin, just curious in terms of you guys mentioning increased competition at the low-end in the U.S. Can you kind of just help us define your partition [of] low-end from high-end right now in terms of future sets or, as part of this, simply your more aggressive pricing strategy?"<br><br>Colin Angle: "[I]n a maturing market, you're going to have products that are lower gross margin, lower profit and, obviously, lower function start to be -- emerge at the bottom of the price points.<br>. . . And given the remarkable growth we're seeing in the category, this is an inevitable occurrence. Above that, we still see tremendous growth that we've enjoyed thus far, having a bright future, won't give exact numbers yet because it's not February. But that's the area where we think the opportunity to generate the most gross | [4] | • Opinion: Mr. Angle's statement that the competition, as of October 25, 2017 was "not particularly material" in the context of describing the impact of increased competition is a statement of opinion. There are no particularized facts showing that this opinion was not sincerely held at the time it was made. (*See* Br. Section II.B.)<br><br>• Not False Or Misleading: Plaintiff admits that, as of October 25, 2017, there "hasn't been much [competition] at least in the United States at the low-end." Indeed, at the end of 2017, iRobot held an 85% U.S. market share. (CCAC ¶ 69.) (*See* Br. Section II.A.) | • Not Opinion/Actionable Opinion: Angle's statement that the competition was not "material at this point in time" and that there "really hasn't been much [competition] . . . at the low-end" is not an opinion because it does not use any opinion qualifiers (*e.g.*, "I think") and expresses certainty or describes existing facts. Even if an opinion, this statement is actionable because Angle omitted material, known facts regarding the impact of new competition on iRobot's store shelf space and sales that conflicted with his positive statements. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 205-06).<br><br>• False and Misleading: This statement is false and misleading because, contrary to Angle's attempt to minimize new competition, by this time Defendants internally were already greatly concerned about the substantial influx of new competition, including notably Shark, which was materially impacting iRobot's shelf space and sales. Even if literally true, this statement omitted such adverse material facts and thus created the false impression that this emerging competition was not a significant threat. (*See* Opp. Br. Section III.C.1; CAC ¶¶ 205-06). |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | margin dollars, the area where intellectual property and innovation are most strongly rewarded. And this is just a natural evolution. [4] *It's not particularly material at this point in time because, to date, there really hasn't been much [competition] at least in the United States at the low-end.* But we expect it to develop over the next few years. [5] *We don't view it as cannibalistic of our growth.* We actually see it as supportive of the overall category maturation. [6] *And when we talk about the -- our analysis of our market opportunity, a lot of this low-end product goes against areas and parts of the market that we were not targeting and thus does, in fact, in a noncannibalistic way, grow the marketplace.*" | [5] | • Opinion: Mr. Angle's statement "we don't view it as cannibalistic of our growth" in the context of describing the impact of increased competition is a statement of opinion. There are no particularized facts showing that this opinion was not sincerely held at the time it was made. (*See* Br. Section II.B.) | • Actionable Opinion: Even if considered an opinion, this statement is actionable because Angle omitted material, known facts regarding the impact of new competition on iRobot's store shelf space and sales that conflicted with his positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 205-06). |
| | | [6] | • Opinion: Mr. Angle's statement that low-end competition does "in a noncannibalistic way, grow the marketplace" in the context of describing the potential market opportunity is a statement of opinion. There are no particularized facts showing that this opinion was not sincerely held at the time it was made. (*See* Br. Section II.B.) | • Not Opinion/Actionable Opinion: Angle's statement that the low-end competition is "*in fact*" "noncanibalistic" of iRobot's sales is not an opinion because it does not use any opinion qualifiers (*e.g.*, "I think") and expresses certainty or describes existing facts. Even if an opinion, this statement is actionable because Angle omitted material, known facts regarding the impact of new competition on iRobot's store shelf space and sales that conflicted with his positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 205-06). |
| 204 | October 25, 2017 – 3Q17 Earnings Call [Tab 3 at 13]<br><br>Analyst: "I was hoping you'd just talk about the mix of products kind of by generation within Roomba. So understand the comments around competition, primarily increasing at the low-end. But just kind of how should investors think about your mix of business for your low-end, your 600 product, which is kind of at the high-end of that range that you provided for the low-price competitors versus the 800 and 900 series, which have less competition? And not necessarily for any given quarter, but over the last year, whatever trend you want to give."<br><br>Alison Dean: "Year-to-date, we've got the | [7] | • Opinion: Mr. Angle's statement that "we think it is resilient and even benefits from this low-end emergence" in the context of describing iRobot's premium strategy is a statement of opinion. There are no particularized facts showing that this opinion was not sincerely held at the time it was made. (*See* Br. Section II.B.) | • Actionable Opinion: Even if an opinion, this statement that iRobot "benefits from" the emergence of low-end competition is actionable because Angle omitted material, known facts regarding the impact of new competition on iRobot's store shelf space and sales that conflicted with his positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 205-06). |

4

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | 600 series globally representing about 35% of overall revenue, with the 900 series and the 800 series being about – equally about 30%. SO the 600 series is slightly ahead of the individual 800 and 900, but there's not a huge difference here to date."<br><br>Colin Angle: "And I think that at a high level, we expect that to continue. We believe that our brand strength and our customer promise is going to be -- create a compelling reason for iRobot to maintain its success with our entry-level price points, which in a more mature marketplace would be in the midrange. Although there is -- we have done some things where we've offered special SKUs to get people under the franchise from time to time. But that midrange entry point is something that you should imagine us continuing. But with the higher price point premium products, the things that will, in total, be the larger percentage of our revenue. So we're quite happy with our -- this premium strategy, and we think it is resilient [7] ***and even benefits from this low-end emergence***." | | | |
| 208 | February 8, 2018 – 4Q17/ FY2017 Earnings Call [Tab 5 at 15-16]<br><br>Analyst: Great.  And then just looking at the U.S., wondering whether or not you're seeing given that inflection in demand, any changes in the ASP [average sale price] dynamics, any pricing pressure, anything that's shifting here in 2017 versus what you saw in 2016, 2017?<br><br>Colin Angle: "Sure. I think that there is | [8] | • <u>Not False Or Misleading</u>. *See* Br. Section II.A.<br><br>• <u>Forward-Looking Statement</u>. (*See* Br. Section II.C.) | • <u>False and Misleading</u>: Angle's statement that iRobot had adequately factored into its guidance the increased "competitive pressure" falsely downplayed the impact of such competition, which was, at this time, increasingly eroding iRobot's sales, shelf space, and market share and causing Defendants' concerns to intensify.  Even if literally true, this statement omitted such material adverse facts and thus created the misleading impression that this new competition was not a significant threat. (*See* Opp. Br. Section III.C.1; CAC ¶¶ 209-10). |

5

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | absolutely an increased competitive pressure. And we work to try to protect ourselves against us and given us – giving ourselves some optionality as to how do we address [8] ***competitive pressure that is embedded in the guidance that we've given.*** We see the low end of the robot vacuum cleaning segment growing, where there are an increasing number of entrants down sort of below the 299 price points that we have traditionally played at. And iRobot certainly intends to continue to aggressively compete throughout the market. So the dynamics are changing. We are seeing the market accelerate because of competitive investment in advertising the market as well as a mainstreaming of robot vacuum cleaning in general. And as I mentioned in the call, even investments from the retailers to prompt the category. So I think that [9] ***again in the guidance that we gave, we allowed ourselves some amount of ability to respond to competitive threats.*** [10] ***And we think we are well equipped to win in 2018*** as should be taken away from the confidence in our revenue growth rates."| | | • Not Forward-Looking/Protected by the Safe Harbor: This statement refers to present competitive pressure and asserts that it already "***is*** embedded" in iRobot's existing guidance—*i.e.*, it has been adequately factored into that guidance. Moreover, even if the statement is forward-looking, it is not protected by the Safe Harbor because it was not accompanied by meaningful cautionary language (including in that the potential risk warned of had already materialized) and was made with actual knowledge of its falsity. (*See* Opp. Br. Section III.C.2; CAC ¶¶ 209-10). |
| | | [9] | • Not False Or Misleading. *See* Br. Section II.A.<br><br>• Forward-Looking Statement. (*See* Br. Section II.C.)<br><br>• Opinion. (*See* Br. Section II.B.) | • False and Misleading: This statement falsely downplayed these "competitive threats," when in reality they were only intensifying and increasingly eroding iRobot's store shelf space, sales and market share at this time in 2018, rather than being adequately factored into the Company's revised guidance. Even if literally true, this statement omitted such material adverse facts and thus created the misleading impression that this new competition was not a significant threat. (*See* Opp. Br. Section III.C.1; CAC ¶¶ 209-10).<br><br>• Not Forward-Looking/Protected by Safe Harbor: This statement refers to present competitive threats and asserts that they have already been adequately factored into iRobot's existing guidance. Moreover, even if the statement is forward-looking, it is not protected by the Safe Harbor because it was not accompanied by meaningful cautionary language (including in that the potential risk warned of had already materialized) and was made with actual knowledge of its falsity. (*See* Opp. Br. Section III.C.2; CAC ¶¶ 209-10).<br><br>• Actionable Opinion: Even if an opinion, this statement is actionable because Angle omitted material, known facts regarding the impact of new |

6

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | | | | competition on iRobot's store shelf space, sales, and market share that conflicted with his positive statements. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 209-10). |
| | | [10] | • Puffery/Optimism: Mr. Angle's statement "we think we are well equipped" is a classic statement of corporate optimism. (*See* Br. Section II.B.)  • Opinion. (*See* Br. Section II.B.) | • Not Puffery/Optimism: Angle's statement that iRobot was "well-equipped to win in 2018" is a concrete, verifiable representation of fact which is the type of statement on which investors rely. Moreover, this statement was not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 209-10).  • Actionable Opinion: Even if an opinion, this statement is actionable because Angle omitted material, known facts regarding the impact of new competition on iRobot's store shelf space, sales and market share that conflicted with his positive statements. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 209-10). |
| 211 | February 8, 2018 – 4Q17 / FY2017 Earnings Call [Tab 5 at 16]  Analyst: "I mean, one of the drivers of growth this year has definitely been the mix up to your higher price point products and selling more in that category. Just wondering, when you look at the market, I think the mix has been running kind of 60% of your sales have been the 800 and the 900 SKUs and 40% in the lower SKUs. Just wondering when you look out next year and may be into 2019, do you think you can hold that 60-40 mix? Or do you think there is a risk of giving some of that trade-up mix benefit that you've seen this year back? | [11] | • Opinion: Mr. Angle's statement "I don't think that – I mean, the real market pressure isn't giving it back" in response to a question about iRobot's ability to maintain its current product revenue mix is a statement of opinion. No reasonable investor would have believed that that Mr. Angle was guaranteeing that iRobot would in fact hold off "lower tech entrants." There are no particularized facts showing that this opinion was not sincerely held at the time it was made. (*See* Br. Section II.B.) | • Not Opinion/Actionable Opinion: Defendants focus only on the beginning portion of the statement and ignore the latter portion. Angle's statement that "we can hold off these lower tech entrants into the marketplace" is not an opinion because it does not use any opinion qualifiers (*e.g.*, "I think") and expresses certainty or describes existing facts. Even if an opinion, this statement is actionable because Angle omitted material, known facts regarding the impact of new competition on iRobot's store shelf space, sales and market share that conflicted with his positive statements. (*See* Opp. Br. Section III.C.4; CAC ¶ 212). |
| | | [12] | • Not False Or Misleading. (*See* Br. Section II.A.) | • False and Misleading: This statement, even if literally true, was false and misleading because it omitted any reference to the impact of negative competitive trends on iRobot, including declining |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | Colin Angle: [11] "*I don't think that – I mean, the real market pressure isn't giving it back.* It's – we as aggressively as we can take our premium features and roll them down to ensure that our entry-level price points continue to be competitive and to ensure that *we can hold off these lower tech entrants into the marketplace.* And the – and so that – I think that the mix – we'll have to start to see how the year rolls out. It's – [12] *we modeled it similar.* Although if there was going to be a deviation from prior year, it might actually be a shift up toward premium as the category continues to mature and the – and iRobot's strongest differentiation will always be at the premium level." | | | store shelf space, sales, and market share, particularly in its entry-level products due to an influx of new cheaper competition at the lower-end segment. Thus, the statement created the misleading impression that the competitive landscape had not changed—*i.e.*, that iRobot's position in this lower-end segment remained "similar." (*See* Opp. Br. Section III.C.1; CAC ¶ 212). |
| 215 | March 1, 2018 – 2018 Analyst Day [Tab 7 at 8]<br><br>Christian Cerda: "This leads me to our share results. So, this is our global share above $200 retail price and I think every time I've come here, I've shown a three-year snapshot, right, and I think every time I say, usually, people that invented a category, eventually give up some of the share as the category grows. And so far, we have been effective that we are holding, right? In general terms, we are holding to our [global] segment share position around 62%. The names, right, the size of the [market share] bars, they change from 1 year to the other, right, and they come up with different strengths for the marketplace, but we feel quite good that [13] '*17 was still another year where we maintained our segment position.*" | [13] | • Not False Or Misleading. (*See* Br. Section II.A.)<br><br>• Puffery/Optimism: Mr. Cerda's statement "we feel quite good that '17 was still another year where we maintained our segment position" is a statement of corporate optimism. (*See* Br. Section II.B.)<br><br>• Opinion. (*See* Br. Section II.B.) | • False and Misleading: Cerda's statement that "'17 was still another year where we maintained our segment position," even if literally true, omitted the fact that competition had significantly eroded iRobot's sales and market share by this time, thus creating the false impression that competition was not materially impacting iRobot. (*See* Opp. Br. Section III.C.1; CAC ¶ 217).<br><br>• Not Puffery/Optimism: This statement is a concrete, verifiable representation of fact about iRobot's market share position, which was not unimportant to a reasonable investor. (*See* Opp. Br. Section III.C.3; CAC ¶ 217).<br><br>• Actionable Opinion: Even if an opinion, this statement is actionable because Cerda omitted material, known facts regarding the impact of new competition on iRobot's store shelf space, sales and market share that conflicted with his positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶ 217). |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| 216 | March 1, 2018 – 2018 Analyst Day [Tab 7 at 9]<br><br>Christian Cerda: "As we project forward, we believe that this gives us a good sense of why we believe that we should be stable in our gross margin, and why, despite a competitive environment, we are not expecting to see gross margin degradation. We have a stack of initiatives that cover already 2 years into the future on how we are going to be bringing more and more operational efficiencies and cost takeout. [14] *That as competition comes in* and we have to react, right, we hopefully -- *that enables us to maintain both the growth and our profitability.*" | [14] | • Puffery/Optimism: Mr. Cerda's statement that "hopefully" iRobot would maintain its growth and profitability in light of increased competition is a statement of corporate optimism. (*See* Br. Section II.B.) | • Not Puffery/Optimism: Cerda's statement that iRobot was maintaining both its growth and profitability is a concrete, verifiable representation of fact that increased competition was not adversely impacting iRobot's business, which was not unimportant to a reasonable investor. (*See* Opp. Br. Section III.C.3; CAC ¶ 217). |
| 221 | April 25, 2018 – 1Q18 Earnings Call [Tab 10 at 13]<br><br>Analyst: "And then I guess in terms of the competition, I'm just wondering how Roomba at the different price points is positioned versus the competition feature-wise. So what are the competitors lacking right now in terms of features and performance as a consumer evaluates choosing between a Roomba and one of these either Chinese brands or even the Samsung?"<br><br>Colin Angle: "These other robots are relatively new on the market and so, they try to go and copy some of our features as best they can. I think that [15] *in Q4, we had tremendous success against the competition.* Our robots are designed with a system and many features working together to deliver | [15] | • Puffery/Optimism: Mr. Angle's statement that iRobot had "tremendous success against the competition" in Q4 in the context of describing the superiority of iRobot's products is classic corporate optimism. (*See* Br. Section II.B.)<br><br>• Opinion. (*See* Br. Section II.B.)<br><br>• Not False Or Misleading: iRobot did have "tremendous success against the competition" in Q4 2017 as it experienced record U.S. revenue growth and maintained a 85% U.S. market share. (*See* Br. Background Section A; *see also* Br. Section II.A.) | • Not Puffery/Optimism: Angle's statement that "in Q4, we had tremendous success against the competition" is a concrete, verifiable representation of fact, which is exactly the type of statement on which investors rely. Moreover, this statement was not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶ 222).<br><br>• Actionable Opinion: Even if an opinion, this statement is actionable because Angle omitted material, known facts regarding the impact of new competition on iRobot's store shelf space and sales that conflicted with his positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶ 222).<br><br>• False and Misleading: This statement that iRobot had "tremendous success" against the competition falsely downplayed the impact of such competition, which |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | superior performance." | | | was, in Q4 2017 already eroding iRobot's sales and store shelf space, and causing Defendants to be greatly concerned about competition. Even if literally true, this statement omitted such material adverse facts and thus created the misleading impression that this competition was not a significant threat. (*See* Opp. Br. Section III.C.1; CAC ¶ 222). |
| 224, 225 | July 25, 2018 – 2Q18 Earnings Call [Tab 13 at 10]<br><br>Analyst: "I can see why consumers would choose a 600 series given the price point, but why are you finding that consumers are going all the way up to the 900, given the price point? I mean, it's much more expensive than the middle series. What does your research say, that somebody will choose the 900 series over the 800 series? I know it's got more bells and whistles and stuff, but it seems like it's incrementally more to the consumer."<br><br>Alison Dean: "So Frank, in my comments, that mix between 900 and 600 really has been consistent with what we've seen the last several quarters, so as we've talked about for a while, [16] *we see a strong amount of demand at the 900 end and the 600 end, and that is -- been very consistent over the last couple of quarters,* so there was nothing really new in how that revenue split between those two models."<br><br>Colin Angle: "I think, to put a little color, the Prime Day success [17] *demonstrated continued strength down at the entry-level price points,* which I think is very material in that we are [18] *not simply getting pushed* | [16] | • Puffery/Optimism: The first portion of Ms. Dean's statement – "we see a strong amount of demand" – is a classic statement of corporate optimism. (*See* Br. Section II.B.)<br><br>• Not False Or Misleading: The second portion of Ms. Dean's statement is not adequately alleged to be false or misleading. (*See* Br. Section II.A.) | • Not Puffery/Optimism: Dean's statement that there is "a strong amount of demand" for both iRobot's premium-tier and entry-level products is a concrete, verifiable representation of fact, which was not unimportant to a reasonable investor. This statement was also not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 227-28).<br><br>• False and Misleading: Dean's statement falsely assured that competition had not significantly impacted iRobot's demand for both its premium ("900 end") and entry-level tier ("600 end") products "over the last couple of quarters," contrary to the internal reality that by this time, new, cheaper competition had significantly eroded iRobot's sales and market share (10% by this time in 2018), particularly in its entry-level products. Indeed, at this time iRobot began to effectively abandon promotion of its entry-level products in its shift to the premium-tier. Even if literally true, this statement omitted materially adverse competitive trends undermining this positive assurance, including iRobot's declining store shelf space, sales, and market share due to new competition, which created the misleading impression that competition was not materially impacting iRobot. (*See* Opp. Br. Section III.C.1; CAC ¶¶ 227-28). |
| | | [17] | • Puffery/Optimism: Mr. Angle's statement that iRobot "demonstrated continued strength at the | • Not Puffery/Optimism: Angle's statement that iRobot had "demonstrated continued strength down |

10

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | *into premium only, we continue to have strong performance across price points,* and I think that that's a very material result and probably the most important message coming out of Prime Day." <br><br> Analyst: "Got it. And that, in fact, you can obviously be competitive at that low end and still maintain margins, right?" <br><br> Colin Angle: "[19] *Correct.*" | | entry-level price points" is a general optimistic statement of current circumstances. (*See* Br. Section II.B.) <br><br> • Opinion. (*See* Br. Section II.B.) | at the entry-level price points" is a concrete, verifiable representation of fact, which was not unimportant to a reasonable investor. This statement was also not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 227-28). <br><br> • Actionable Opinion: Even if an opinion, this statement is actionable because Angle omitted material, known facts that new, cheaper competition had significantly eroded iRobot's sales and market share (10% by this time), particularly in its entry-level products such that at this time iRobot began to effectively abandon promotion of those products. Such omitted facts conflicted with his positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 227-28). |
| | | [18] | • Puffery/Optimism: Mr. Angle's statement that iRobot is "not simply getting pushed into premium only, we continue to have strong performance" is a general optimistic statement of current circumstances. (*See* Br. Section II.B.) <br><br> • Opinion. (*See* Br. Section II.B.) | • Not Puffery/Optimism: Angle's statement that iRobot continued "to have strong performance across price points" is a concrete, verifiable representation of fact, which was not unimportant to a reasonable investor. This statement was also not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 227-28). <br><br> • Actionable Opinion: Even if an opinion, this statement is actionable because Angle omitted material, known facts that new, cheaper competition had significantly eroded iRobot's sales and market share (10% by this time), particularly in its entry-level products such that at this time iRobot began to effectively abandon promotion of those products. Such omitted facts conflicted with his assurance that iRobot was "not simply getting pushed into premium only." (*See* Opp. Br. Section III.C.4; CAC ¶¶ 227- |

11

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | | | | 28). |
| | | [19] | • <u>Puffery/Optimism</u>: Mr. Angle's statement that it was "correct" that the Company could remain competitive at the low and still maintain margins is a general optimistic statement of current circumstances. (*See* Br. Section II.B.)<br><br>• <u>Opinion</u>. (*See* Br. Section II.B.) | • <u>Not Puffery/Optimism</u>: Angle's statement that iRobot was still competitive at the low-end is a concrete, verifiable representation of fact, which was not unimportant to a reasonable investor. This statement was also not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 227-28).<br><br>• <u>Not Opinion/Actionable Opinion</u>: Angle's statement that it was "correct" that iRobot could remain competitive at the low-end is not an opinion because it does not use any opinion qualifiers (*e.g.*, "I think") and expresses certainty or describes existing facts. Even if an opinion, this statement is actionable because Angle omitted material, known facts that new, cheaper competition had significantly eroded iRobot's sales and market share (10% by this time), particularly in its entry-level products such that at this time, iRobot began to effectively abandon promotion of those products. Such omitted facts conflicted with his positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 227-28). |
| 226 | July 25, 2018 – 2Q18 Earnings Call [Tab 13 at 14]<br><br>Analyst: "So Colin, on the last call you mentioned more Chinese competitors coming into the shelves in Europe, and mentioned that that could potentially happen in the U.S. this year. Reading your comments today, maybe I'm just reading too much into it, but when you talk about the | [20] | • <u>Puffery/Optimism</u>: Mr. Angle's statement concerning its "strong performance" is clearly a statement of optimism. (*See* Br. Section II.B.) | • <u>Not Puffery/Optimism</u>: Angle's statement that iRobot demonstrated "its ability to maintain strong performance" at the low and high end of the market is a concrete, verifiable representation of fact, which was not unimportant to a reasonable investor. This statement was also not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 227-28). |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | competitive environment looking similar to last year, to me that sounds a bit more optimistic than last call. First of all, am I reading that right, and if so, can you just talk about what has changed?"<br><br>Colin Angle: "I think that we certainly saw an influx of new competitors in Q4, and it did change the dynamics in the marketplace somewhat. We've seen that stabilize through the first half, and I think that, again, you look at Prime Day as an exemplar of, okay, there is significant availability of these low-end models. How much share did they take, how much did they disrupt, and what did they do in Prime Day. And [20] *the results are very favorable relative to iRobot demonstrating its ability to maintain strong performance at the low end of the marketplace while we maintain our strong performance at the high end.* And so that I think that there's a very good indication that, yes, the market was somewhat disrupted at the end of Q4, that the market growth rates certainly allowed for them to enter [21] *without substantially impacting the performance we had predicted and laid out,* and *the environment, while certainly very competitive, is not demonstrating new disruptions.*" | [21] | • Puffery/Optimism: Mr. Angle's statement that "the environment, while certainly very competitive, is not demonstrating new disruptions" is a general optimistic statement about present circumstances such that a reasonable investor would find it unimportant to the total mix of information. (*See* Br. Section II.B.)<br><br>• Opinion. (*See* Br. Section II.B.) | • Not Puffery/Optimism: Defendants apparently do not challenge the portion of this statement asserting that new competition had entered the market "without substantially impacting the performance we had predicted and laid out." Angle's related statement that the competitive environment "is not demonstrating new disruptions" on iRobot's business is a concrete, verifiable representation of fact, which was not unimportant to a reasonable investor. This statement was also not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 227-28).<br><br>• Actionable Opinion: Even if an opinion, this statement is actionable because Angle omitted material, known facts that new, cheaper competition had significantly eroded iRobot's sales and market share (10% by this time), particularly in its entry-level products such that at this time iRobot began to effectively abandon promotion of those products. Such omitted facts conflicted with his positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 227-28). |
| 231 | September 13, 2018 – Morgan Stanley Laguna Conference [Tab 15 at 6]<br><br>Analyst: "Well, I kind of have to also address the elephant in the room being trade. Everybody is getting asked the question at this conference this year. Is it impacting your business? And if so, how | [22] | • Not False Or Misleading. (*See* Br. Section II.A.) | • False and Misleading: Contrary to this statement, at this time, iRobot had already increased its Roomba inventory in the U.S. to mitigate some of the financial impact of tariffs but was also experiencing declining sales due to increased competition, which was a "double whammy" for its business. Thus, the upcoming imposition of tariffs later that month was already adversely impacting iRobot's business. Even |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | and what are you seeing to date?" <br><br> Alison Dean: "[22] ***It's not impacting our business to date.*** The RVC products are part of List 3 of the potential tariffs. But those have not been definitively implemented yet. There's also a wide range of what those tariffs would be, from 10% to 25%. So today our expectations don't include any impact from tariffs." | | | if literally true, this statement omitted that the inevitable product price increases to offset the tariff costs would only further diminish the already declining demand for iRobot's expensive products due to increased, cheaper competition. (*See* Opp. Br. Section III.C.1; CAC ¶ 232). |
| 234, 235 | October 24, 2018 – 3Q18 Earnings Call [Tab 17 at 8, 10, 13] <br><br> Analyst: "I'd like to, if we could, maybe talk a little bit more about the tariffs and the impact. And I know you're not in a position to talk about 2019, but what I'm wondering is back in March of 2018, you – at Investor Day, you had your slide targeting 50% gross margins longer term.  So I'm wondering how we should think about it even the initial tariff in relation to that target? | [23] | • Opinion: Mr. Angle's statement that "iRobot is the premium player and that's very advantageous because price sensitivity at the high end is much lower than at the bottom end" is a statement of opinion. There are no particularized facts showing that this opinion was not sincerely held at the time it was made. (*See* Br. Section II.B.) | • Not Opinion/Actionable Opinion: Angle's statement is not an opinion because it does not use any opinion qualifiers (*e.g.*, "I think") and expresses certainty or describes existing facts.  Even if an opinion, this statement is actionable because Angle omitted material, known facts that demand for iRobot's premium-tier products was only further declining in 2018 due to increased cheaper competition, and consumers were reluctant to pay even higher prices for iRobot's already over-priced premium-tier models. Such omitted facts conflicted with his positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 236-39). |
| | Alison Dean: "Yes, we really can't comment on 2019 or beyond gross margins at this point, Jim.  But one thing I think it's worth clarifying is that for Q4 2018, we fully took on the burden of those tariffs, that $5 million we were absorbing ourselves without any price increases going out in 2018.  We're assessing a lot of different scenarios about how to tackle the 25% tariffs if they do in fact go into effect on January 1.  And a lot of those scenarios do assume some level of potentially passing some of the pricing on to the consumers, but we haven't exactly settled on the final answer yet there, but it is likely that our expectations that | [24] | Puffery/Optimism: Mr. Angle's statement that the Company was "well-positioned" in context of discussing its tariff strategy is a statement of future optimism. (*See* Br. Section II.B.) <br><br> • Opinion. (*See* Br. Section II.B.) | • Not Puffery/Optimism: Angle's statement that iRobot was "well-positioned" against competitors as a "premium player" is a concrete, verifiable representation of fact, which is exactly the type of statement on which investors rely.  This statement was also not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns.  (*See* Opp. Br. Section III.C.3; CAC ¶¶ 236-39). <br><br> • Not Opinion/Actionable Opinion: Angle's statement is not an opinion because it does not use any opinion qualifiers (*e.g.*, "I think") and expresses certainty or describes existing facts.  Even if an opinion, this |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | we set in February would not assume that we carry the full burden of the tariff increases.<br><br>Colin Angle: "Let me add another just sort of high-level color as we think about tariffs. The first is that, as evidenced by our continuing strong growth, this is a very healthy market so that many of our growth expectations, as we talked about them, are well below the market growth so that there is some ability to absorb an impact without putting us in a dangerous situation. And so, [23] *really this is about competitive positioning within this growing market.* In which case, that leads me to 2 other insights that I would like you to carry away from this conversation. The first is that *iRobot is the premium player and that's very advantageous because price sensitivity at the high end is much lower than at the bottom end.* [24] *And so that we're well positioned as we think about whether or not what exactly the mix of margin and price increases will be our optimal strategy …*"<br><br>Analyst: "Okay. And then just last, you talked about in your prepared remarks that this tariff topic would have a moderate effect on a strong market. I guess, what do you view the market rate being – market growth rate being? And then what would it be – what is that moderate effect, if you could quantify that a little bit?"<br><br>Colin Angle: "So this quantification is going to be challenging. It hasn't happened yet. I think that when you look at iRobot's growth | [25] | • Not False Or Misleading. (*See* Br. Section II.A.)<br><br>• Forward-Looking Statement. (*See* Br. Section II.C.) | statement is actionable because Angle omitted material, known facts that demand for iRobot's premium-tier products was only further declining in 2018 due to increased cheaper competition, and consumers were reluctant to pay even higher prices for iRobot's already over-priced premium-tier models. Such omitted facts conflicted with his positive statement that iRobot remained "well-positioned" against competitors despite the tariffs. . (*See* Opp. Br. Section III.C.4; CAC ¶¶ 236-39).<br><br>• False and Misleading: Angle's statement dismissing the impact of tariff-related price increases on iRobot's demand because the "premium customer is less price sensitive," was false and misleading because it omitted that demand for iRobot's premium-tier products was declining in 2018 due to increased cheaper competition, and that consumers were reluctant to pay even higher prices for iRobot's premium-tier models. Even if literally true, the statement created the misleading impression that tariffs were not a significant threat to iRobot's business. (*See* Opp. Br. Section III.C.1; CAC ¶¶ 236-39).<br><br>• Not Forward-Looking/Protected by Safe Harbor: This statement is not forward-looking because it refers to Defendants' present assessment of the price-sensitivity of iRobot's customers– *i.e.*, that a "premium customer *is* less price sensitive." Moreover, even if the statement is forward-looking, it is not protected by the Safe Harbor because it was not accompanied by meaningful cautionary language (including in that the potential risk warned of had already materialized) and was made with actual knowledge of its falsity. (*See* Opp. III.C.2; CAC ¶¶ 236-39). |

15

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | rate in Q3 of 39% and there is additional growth at entry-level price points where we don't play, you can definitely get a sense of how fast this market is growing. [25] *A tariff would impact most directly price points below which we play, where if you're a value player, a price increase has a very material impact on growth. But further up, the value -- the price change, your premium customer is less price sensitive.* And so it's a complex equation that favors the premium player, and so the markets where we depend most upon in order to deliver our growth are going to be markets that are less affected by tariffs. So I can't -- I'm not going to be satisfying in my quantitative articulation. You have to give us a little more time on that front. But again, this is not a world end kind of situation. This is something that will affect all competitors. And in a very real way, [26] *we are better positioned than our major competitors [that] play at the low end to maintain an aggressive stance.*" | [26] | • Puffery/Optimism: Mr. Angle's statement that the company is "better positioned than our major competitors" is clearly a statement of optimism. (*See* Br. Section II.B.)<br><br>• Opinion. (*See* Br. Section II.B.) | • Not Puffery/Optimism: Angle's statement that iRobot was "better positioned" than its low-end competitors is a concrete, verifiable representation of fact, which is exactly the type of statement on which investors rely. This statement was also not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 236-39).<br><br>• Not Opinion/Actionable Opinion: Angle's statement is not an opinion because it does not use any opinion qualifiers (*e.g.*, "I think") and expresses certainty or describes existing facts. Even if an opinion, this statement is actionable because Angle omitted material, known facts that demand for iRobot's premium-tier products was only further declining in 2018 due to increased cheaper competition, and consumers were reluctant to pay even higher prices for iRobot's already over-priced premium-tier models. Such omitted facts conflicted with his positive statement that iRobot was "better positioned" than its low-end competitors. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 236-39). |
| | Analyst: "And then one last question for me and kind of a follow-up on Mike's. Have you done any work on price elasticity? And a 5% or 10% increase on pricing, what do you think that will do to kind of the growth rates?<br><br>Colin Angle: "Yes, we have done a lot of interim research on price elasticity. And I think that I tried to give as much color as we're able to give on the call saying that the – [27] *it's good to be a premium retailer or a premier manufacturer. There is certainly more flexibility at the top than at the bottom,* and again, we've got very good | [27] | • Puffery/Optimism: Mr. Angle's statement that "it's good to be a premium retailer or a premier manufacturer and that "[t]here is certainly more flexibility at the top than at the bottom" is a general statement of optimism such that a reasonable investor would find it unimportant to the total mix of information. (*See* Br. Section II.B.)<br><br>• Opinion. (*See* Br. Section II.B.) | • Not Puffery/Optimism: Angle's statement about iRobot's "premium" position and that there was "more flexibility" for such "premium manufacturer[s]" is a concrete, verifiable representation of fact, which was not unimportant to a reasonable investor. This statement was also not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 236-39).<br><br>• Actionable Opinion: Even if an opinion, this statement is actionable because Angle omitted material, known facts that demand for iRobot's |

16

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | models as to how to craft our strategy next year." | | | premium-tier products was only further declining in 2018 due to increased cheaper competition, and consumers were reluctant to pay even higher prices for iRobot's already over-priced premium-tier models. Such omitted facts conflicted with his positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 236-39). |
| 241 | December 5, 2018 – Raymond James Technology Investors Conference [Tab 19 at 5]<br><br>Analyst: "There's been a lot of discussion about the competitive landscape. We've seen a lot of new entrants on the lower end. We've seen some companies try to come in over the top on the high end with varying levels of success. It seems the premium offerings struggle. The lower end offerings generally seem to be fairly decent products, but can you maybe talk about how you sit on that, how that group has really changed over time? And you have a lot of intellectual property and you've put some people out of the market by defending your IP, maybe wrap that all together for people."<br><br>Alison Dean: "Over the last several years, we've had more competition coming in from what we call our entry price points or the low end of our range . . . [s]o, the type of competition has changed over the years and – but there's always a lot of it and I expect that there will continue to be more and more . . . [s]o, we have a very strong consumer connection which is one of the reasons, I think, our innovations have really resonated with the consumer base | [28] | • Not False Or Misleading. (*See* Br. Section II.A.) | • False and Misleading: Dean's statement that "we've been able to maintain [iRobot's market] share" despite the increase in competition conflicted with internal facts, notably iRobot's 10% loss of its market share since the start of the Class Period due to new competition. Even if literally true in that iRobot had still been "able to maintain" its leading market share position (*i.e.*, it was still number one), this statement omitted this substantial 10% share decline (and other adverse competitive trends regarding iRobot's declining sales and shelf space), which created a misleading impression that the new competition was not significantly impacting iRobot's business. (*See* Opp. Br. Section III.C.1; CAC ¶ 242). |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | and [28] *we've been able to maintain the share despite the fact that these new entrants are coming in.*" | | | |
| 244 | February 7, 2019 – 4Q18 / FY2018 Earnings Call [Tab 22 at 8, 13]<br><br>Alison Dean: "As it relates to tariffs, on January 1, 2019, we increased prices on our premium i7 and i7+ robots sold in the U.S. to help offset the impact of the 10% we are incurring on all Roomba imports into the U.S. At the 10% level, we anticipate $20 million to $25 million of tariff costs to be incurred in 2019. As currently structured, the U.S. Government plans to increase tariffs to 25% on March 1, 2019. If that happens, we would likely increase our prices again to offset the incremental tariff costs incurred. Should the tariffs be lifted altogether, we would expect to lower prices to their pretariff levels.<br><br>. . . . So the $20 million to $25 million is the expected check we will write to pay for the tariffs. With the [29] *price increases that we made on the i7 and i7+, we're hoping that those price increases mostly offset that incremental $20 million to $25 million of tariff costs that we'll incur.*" | [29] | • Puffery/Optimism: Plaintiff misleadingly quotes Ms. Dean's statement. Ms. Dean stated that iRobot was "hoping" that the price increases for the i7 and i7+ models mostly offset the incremental tariff costs. This statement is a classic example of corporate optimism about a future financial outcome. As a matter of law, reasonable investors know that future financial outcomes cannot be guaranteed.  (*See* Br. Section II.B.)<br><br>• Forward-Looking Statement. (*See* Br. Section II.C.) | • Not Puffery/Optimism: Even if an expression of hope, Dean's statement that the tariff-related price increases would "mostly offset" the $20-$25 million of tariff costs is actionable because, when read in context, it reassured investors that that the tariffs would not significantly impact iRobot's business, without disclosing recent troubling developments about iRobot's declining demand, sales, and market share due to cheaper new competition.  Thus, Defendants knew but failed to disclose that such price increases on iRobot's already expensive products would only further diminish its declining demand.  In this context, Dean's representation would not have been unimportant to a reasonable investor.  (*See* Opp. Br. Section III.C.3; CAC ¶ 245).<br><br>• Not Forward-Looking/Protected by Safe Harbor: This statement that "*we're* hoping" that price increases on the i7 and i7+ models offset the tariffs refers to Defendants' *present* belief that tariffs would not impact iRobot's business.  Even if the statement is forward-looking, it is not protected by the Safe Harbor because it was not accompanied by meaningful cautionary language (including in that the potential risk warned of had already materialized) and was made with actual knowledge of its falsity. (*See* Opp. III.C.2; CAC ¶ 245). |

18

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| 246 | February 7, 2019 – 4Q18 / FY2018 Earnings Call [Tab 22 at 5]<br><br>Colin Angle: "[30] *In the U.S.* we continue to see new competitive products selling through Amazon marketplace, *but not on shelves of retailers,* where we still generate 60% of our domestic revenue." | [30] | • Not False Or Misleading. (*See* Br. Section II.A.)<br><br>• Puffery/Optimism: Mr. Angle's statement that the company "continue[s] to see new competitive products selling through Amazon marketplace, but not on shelves of retailers" is classic corporate optimism as it is vague about what competitive products were not selling on shelves of retailers or how such sales were measured. (*See* Br. Section II.B.) | • False and Misleading: Angle's statement that "new, competitive products" were not selling "on the shelves of retailers," was contrary to internal market research showing that iRobot was increasingly losing store shelf space, including the valuable end cap space, at important big box retail stores, to new competitors' products.  Even if literally true, this statement omitted these and other adverse competitive trends known internally (including declining sales and market share due to increased competition), which created the misleading impression that competition was not a significant threat to iRobot's business.  (*See* Opp. Br. Section III.C.1; CAC ¶ 247).<br><br>• Not Puffery/Optimism: Angle's statement that "new, competitive products" were not selling "on the shelves of retailers" is a concrete, verifiable representation of fact, which, when read in context, was not unimportant to a reasonable investor. (*See* Opp. Br. Section III.C.3; CAC ¶ 247). |
| 248 | February 7, 2019 – 4Q18 / FY2018 Earnings Call [Tab 22 at 5]<br><br>Colin Angle: "Our U.S. estimates for 2018 show a [31] *3 point share loss overall,* [32] *but we firmly believe that with low household penetration providing an opportunity for substantial category growth, we are well positioned to continue our growth trajectory in this market.*" | [31] | • Not False Or Misleading. (*See* Br. Section II.A.) | • False and Misleading: Angle's statement that there was a "3 point share loss overall" in 2018 misrepresented the actual loss of market share iRobot had experienced in 2018 due to competition, which was 10%—more than triple the figure provided by Angle.  Even if literally true, this statement omitted this substantial 10% market share decline (and other adverse competitive trends regarding iRobot's declining sales and shelf space), which created a misleading impression that competition was not materially impacting iRobot. (*See* Opp. Br. Section III.C.1; CAC ¶¶ 249-50). |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | | [32] | • Puffery/Optimism: Mr. Angle's statement that the company is "well positioned" to continue its growth trajectory is clearly a general statement of optimism about future financial success. (*See* Br. Section II.B.)<br><br>• Opinion. (*See* Br. Section II.B.) | • Not Puffery/Optimism: Angle's statement that iRobot was "well-positioned to continue [its] growth trajectory" is a concrete, verifiable representation of fact, which is the type of statement on which investors rely. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 249-50).<br><br>• Actionable Opinion: Even if an opinion, this statement is actionable because Angle omitted material, known facts regarding iRobot's internal research indicating by this time that the RVC market was not growing, and that many Roomba consumers were repeat rather than new customers, such that iRobot was not penetrating into new households. This statement also omitted iRobot's substantial 10% market share decline due to increased competition (and other adverse competitive trends regarding iRobot's declining sales and shelf space). Such omitted facts conflicted with Angle's positive statement. (*See* Opp. Br. Section III.C.4; CAC ¶¶ 249-50). |
| 252 | April 24, 2019 – 1Q19 Earnings Call and Partial Disclosure [Tab 24 at 4]<br><br>Colin Angle: [33] "***Q1 sell-through was good, setting us up for the higher year-over-year Q2 2019 revenue growth rate we discussed last quarter.*** Given our Q1 results and our outlook for the rest of the year, [34]*we are reaffirming our 2019 full year revenue and operating income expectations then increasing our full year expectations for earnings per share.*" | [33] | • Puffery/Optimism: Mr. Angle's statement that "Q1 sell-through was good" is typical corporate optimism. (*See* Br. Section II.B.)<br><br>• Opinion. (*See* Br. Section II.B.)<br><br>• Forward-Looking Statement. (*See* Br. Section II.C.) | • Not Puffery/Optimism: Angle's statement that "Q1 sell-through was good" is a concrete, verifiable representation of fact, which was not unimportant to a reasonable investor. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 255-56).<br><br>• Not Opinion/Actionable Opinion: Angle's statement is not an opinion because it does not use any opinion qualifiers (*e.g.*, "I think") and expresses certainty or describes existing facts. Even if an opinion, this statement is actionable because Angle omitted material, known facts, including that iRobot's market share, store shelf space, and sales continued to be eroded by increased cheaper competition, particularly after the tariff-related price increases that went into effect in Q1 2019. Such omitted facts conflicted with his positive statement. (*See* Opp. Br. |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | | | | Section III.C.4; CAC ¶¶ 255-56).<br><br>• <u>Not Forward-Looking/Protected by Safe Harbor</u>: This statement refers to historical fact regarding the Company's "Q1" 2019 sales, which "*was* good." Moreover, even if the statement is forward-looking, it is not protected by the Safe Harbor because it was not accompanied by meaningful cautionary language (including in that the potential risk warned of had already materialized) and was made with actual knowledge of its falsity. (*See* Opp. Br. Section III.C.2; CAC ¶¶ 255-56). |
| | | [34] | • <u>Forward-Looking Statement.</u> (*See* Br. Section II.C.) | • <u>Not Forward-Looking/Protected by Safe Harbor</u>: This statement that Defendants "*are* affirming" their income and revenue expectations refers to Defendants' *present* belief that this guidance is currently achievable based on then-existing conditions. Moreover, even if the statement is forward-looking, it is not protected by the Safe Harbor because it was not accompanied by meaningful cautionary language (including in that the potential risk warned of had already materialized) and was made with actual knowledge of its falsity. (*See* Opp. Br. Section III.C.2; CAC ¶¶ 255-56). |
| 253 | <u>April 24, 2019 – 1Q19 Earnings Call and Partial Disclosure</u> [Tab 24 at 11]<br><br><u>Analyst</u>: "Okay. And on the product mix this quarter, I know in past quarters you've had a bit of a barbell effect in terms of the 600 series and some of the newer models. Was that the case this quarter with the other end of the barbell being newer models?"<br><br><u>Alison Dean[5]</u>: "Yes. This quarter, we saw a little bit greater than 50% of our revenue | [35] | • <u>Puffery/Optimism</u>: Ms. Dean's statement that the company received "really good traction to-date" with its higher-priced models in discussing the revenue generated from those products is a current statement of optimism. (*See* Br. Section II.B.)<br><br>• <u>Opinion</u>. (*See* Br. Section II.B.) | • <u>Not Puffery/Optimism</u>: Dean's statement that iRobot has had "good traction to-date with the higher-priced [models]" is a concrete, verifiable representation of fact, which, when read in context, was not unimportant to a reasonable investor. This statement was also not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 255-56).<br><br>• <u>Not Opinion/Actionable Opinion</u>: Dean's statement is not an opinion because it does not use any opinion |

---

[5] Defendants incorrectly attributed this misstatement to Angle. *See* Defendants' Ex. A at 35 & Tab 24 at 11.

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | coming from the 900 series and above, with the remainder coming below that. [35] *So really good traction to-date with the higher-priced [models].*" | | | qualifiers (*e.g.*, "I think") and expresses certainty or describes existing facts. Even if an opinion, this statement is actionable because Dean omitted material, known facts regarding iRobot's declining sales and market share due to increased competition, including that by forcing iRobot to further increase the prices of its already expensive premium-tier products, tariffs had only exacerbated the Company's sales struggles due to increased competition, which had already exerted substantial price pressure on iRobot. Such omitted facts conflicted with her positive statement that iRobot has had "good traction to-date with the higher-price models." (*See* Opp. Br. Section III.C.4; CAC ¶¶ 255-56). |
| 254 | April 24, 2019 – 1Q19 Earnings Call and Partial Disclosure [Tab 24 at 5]<br><br>Colin Angle: "As planned, we are -- we increased pricing on the i7 and i7+ at the beginning of the year to partially offset the impact of tariffs. [36] *Despite the higher prices, Q1 demand was ahead of plan for this product.*" | [36] | • <u>Not False Or Misleading</u>. (*See* Br. Section II.A.) | • <u>False and Misleading</u>: Angle's statement that "Q1 demand was ahead of plan" was contrary to internally known facts that the i7 and i7+ sold poorly after their release in September 2018 due to their high prices and performance issues. This statement also falsely downplayed the negative impact of tariffs on sales and demand for these premium-tier Roombas given that the tariff-related price increases, which went into effect in Q1 2019, further diminished the i7 and i7's lackluster demand. Even if literally true, this statement omitted such and other adverse, material facts, creating the misleading impression that tariffs were not adversely impacting iRobot's demand. (*See* Opp. Br. Section III.C.1; CAC ¶¶ 255-56). |
| 259 | July 24, 2019 – 2Q19 Earnings Call and Partial Disclosure [Tab 27 at 4, 18]<br><br>Colin Angle: "The U.S. segment did not accelerate in the second quarter as we had expected, but we had [37] *maintained our segment share in this region and are not seeing any share erosion due to competition*." | [37] | • <u>Not False Or Misleading</u>. (*See* Br. Section II.A.) | • <u>False and Misleading</u>: Angle's statement that the Company had "maintained our segment share" and was "not seeing any share erosion due to competition" conflicted with internal facts, notably iRobot's 10% loss of its market share since the start of the Class Period due to new competition. Even if literally true in that iRobot had still "maintained our segment position," this statement omitted this substantial 10% share decline (and other adverse |

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
| | Analyst: "And then just one more if I may on the market share. Some of the surveys that I've done as well clearly point to the strength that iRobot and the brand that you guys have. But is there any data that you have, whether it's sales for data, et cetera, that suggests that market share was pretty much flat in the region for iRobot?<br><br>Alison Dean:[6] [38] "*[W]e've held our share based on the data we are seeing. The competition doesn't seem to have taken anything in the first half of the year.*" | [38] | • <u>Not False Or Misleading</u>. (*See* Br. Section II.A.) | competitive trends regarding iRobot's declining sales and shelf space), which created a misleading impression that the new competition was not significantly impacting iRobot's business. (*See* Opp. Br. Section III.C.1; CAC ¶¶ 249, 262).<br><br>• <u>False and Misleading</u>: Dean's statement that "we've held our share based on the data we are seeing" conflicted with internal facts, notably iRobot's 10% loss of its market share since the start of the Class Period due to new competition. Even if literally true in that iRobot had not lost additional market share to competitors in the "first half of" 2019, this statement omitted this substantial 10% share decline in 2018 (and other adverse competitive trends regarding iRobot's declining sales and shelf space), which created a misleading impression that new competition was not significantly impacting iRobot's business. (*See* Opp. Br. Section III.C.1; CAC ¶¶ 249, 262). |
| 260 | <u>July 24, 2019 – 2Q19 Earnings Call and Partial Disclosure</u> [Tab 27 at 13]<br><br>Analyst: "Maybe a couple of quick ones here for Colin. So Colin, I think with – to me, just with the tariffs here, it really forced the price of some of your vacuums above a $1,000, right? And I think that's been a threshold or a ceiling that you -- historically, you've may wanted to avoid. So I would just like to get your thought on just kind of growth in the industry in a sub $200 market? Are you still seeing that there with the -- obviously, there's been less price increases because of tariffs in the robot's category?<br><br>Colin Angle: "So that -- I am certain that s9 | [39] | • <u>Puffery/Optimism</u>: Mr. Angle's statement that demand and the features of the s9 Roomba products "are being successful" is nothing more than corporate optimism. (*See* Br. Section II.B.) | • <u>Not Puffery/Optimism</u>: Angle's statement that "the demand" for iRobot's products was "being successful" is a concrete, verifiable representation of fact, which, when read in context, was not unimportant to a reasonable investor. This statement was also not unimportant to a reasonable investor because it was made in direct response to a question from a security analyst raising these concerns. (*See* Opp. Br. Section III.C.3; CAC ¶¶ 249, 262). |

---

[6] Defendants incorrectly attributed this statement to Angle. *See* Defendants' Ex. A at 38 & Tab 27 at 18.

| (¶) | Misstatement or Omission[1] | Entry No. | Defendants' Argument Why the Statement is Not Actionable | Plaintiff's Response[2] |
|---|---|---|---|---|
|  | will be doing very well despite the fact that they've broken that $1000 price barrier, which to me, is not that it's great to have higher prices, [39] *but definitely the demand and the features of those products are being successful* and I could only dream and imagine what we'd be doing if we could have those robots below $1000." |  |  |  |

24