UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re IROBOT CORPORATION SECURITIES : 
LITIGATION                                                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x     Master File No.: No. 1:19-12536-DJC
                                                                            :

This Document Relates To:                                 :     CLASS ACTION
                                                                            :
           ALL ACTIONS                                      :     **LEAVE TO FILE GRANTED**
                                                                            :     **ON MARCH 19, 2020**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

Dated: August 3, 2020

James R. Carroll
Alisha Q. Nanda
Rene H. DuBois
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

*Counsel for Defendants*
*iRobot Corporation, Colin M. Angle,*
*Alison Dean and Christian Cerda*

## TABLE OF AUTHORITIES

**CASES**.................................................................................................................**PAGE(S)**

*In re Acuity Brands, Inc. Securities Litigation*,
C.A. No. 1:18-CV-2140-MHC, 2019 U.S. Dist. LEXIS 231099
(N.D. Ga. Aug. 12, 2019)...................................................................................9

*In re A123 Systems, Inc. Securities Litigation*,
930 F. Supp. 2d 278 (D. Mass. 2013) ................................................................5

*In re Allaire Corp. Securities Litigation*,
224 F. Supp. 2d 319 (D. Mass. 2002) ..............................................................10

*City of Dearborn Heights Act 345 Police & Fire Retirement System v. Waters Corp.*,
632 F.3d 751 (1st Cir. 2011)...........................................................................8, 9

*Collier v. ModusLink Global Solutions, Inc.*,
9 F. Supp. 3d 61 (D. Mass. 2014) .............................................................2, 4, 7

*Coyne v. Metabolix, Inc.*,
943 F. Supp. 2d 259 (D. Mass. 2013) .......................................................4, 6, 10

*Crowell v. Ionics, Inc.*,
343 F. Supp. 2d 1 (D. Mass. 2004) ....................................................................2

*Fire & Police Pension Association of Colorado v. Abiomed, Inc.*,
778 F.3d 228 (1st Cir. 2015).........................................................................1, 2

*Guerra v. Teradyne Inc.*,
No. Civ.A. 01-11789-NG, 2004 WL 1467065 (D. Mass. Jan. 16, 2004) ...........................8

*Ho v. Duoyuan Global Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012)................................................................7

*Jackson v. Abernathy*,
960 F.3d 94 (2d Cir. 2020)................................................................................5

*Mahoney v. Foundation Medicine, Inc.*,
342 F. Supp. 3d 206 (D. Mass. 2018) ................................................................9

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
575 U.S. 175 (2015).........................................................................................10

*Sanders v. AVEO Pharmaceuticals, Inc.*,
No. C.A. 13-11157-DJC, 2015 WL 1276824 (D. Mass. Mar. 20, 2015) ...........................6

*Scritchfield v. Paolo*,
274 F. Supp. 2d 163 (D.R.I. 2003)...................................................................10

*In re Smith & Wesson Holding Corp. Securities Litigation*,
  604 F. Supp. 2d 332 (D. Mass. 2009) ...............................................................................10

*Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*,
  412 F. Supp. 3d 353 (S.D.N.Y. 2019), appeal filed, 19-3468 (2nd Cir. Oct. 23,
  2019) .................................................................................................................................10

*In re Vertex Pharmaceuticals Inc. Securities Litigation*,
  357 F. Supp. 2d 343 (D. Mass. 2005) ............................................................................3, 7

**1.      *Plaintiff's Opposition confirms that the Complaint does not come close to meeting the PSLRA's heightened pleadings standards.*** The Opposition's one-line request at the very tail end of its brief (Opp. at 30) seeking leave to file yet another complaint, if and when this motion is resolved in favor of dismissal, is both a telling recognition that the present Complaint is deficient and a deficient request to make another run at repairing it. Plaintiff does not even attempt to explain what would be different or better next time. It is neither Defendants' nor the Court's role to effectively comment on draft complaints *seriatim* to assist Plaintiff in meeting his pleading burden. The Complaint should be dismissed with prejudice. *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.,* 778 F.3d 228, 247 (1st Cir. 2015) (holding that a court need not allow further pleadings pursuant to a cursory request made in an opposition brief).

**2.      *The Opposition's attempts to rehabilitate its CWs fail.*** (Opp. at 9-18). Plaintiff's scienter allegations principally rely on the uncorroborated and deficient allegations from CW1 and CW2 – former low-level employees not of iRobot, but of a third-party marketing research vendor (CCS) who worked in just two local regions and therefore were in no position to know anything about iRobot's U.S. sales, shelf space or market share. Plaintiff contends that even though CW1 did not work for iRobot, CW1 "*de facto* reported directly to iRobot personnel," "wore an iRobot branded shirt," and "interacted with iRobot personnel more frequently than with CCS employees" on calls and trips to iRobot's headquarters. (Opp. at 10.) None of those generic allegations provides a sufficient basis of knowledge for CW1's statements that "iRobot saw the negative impact from increased competition on its sales" (CCAC ¶ 93) or that "[i]nternally, Defendants, knew that iRobot's shift in strategy to the premium-tier products,

however, was failing" (*id.* ¶ 121).  CW1 is not even alleged to have had knowledge of iRobot's

financials, let alone for the entire United States.[1]  (Br. at 18.)

The Opposition also concedes that *none* of the CWs are alleged to have ever

spoken with or interacted directly with any Individual.  (Opp. at 11.)  Plaintiff's argument that

"direct contact between the CWs" and the Individuals is not required to plead scienter (*id.*)

ignores the fact that courts consistently recognize that the reliability of confidential witnesses is

weakened where they are not alleged to have had contact with a defendant.  *Abiomed*, 778 F.3d

at 245 (discrediting CW allegations where they had little ongoing contact with senior

management).  Plaintiff's own case supports this conclusion.  *Collier v. ModusLink Glob. Sols.,*

*Inc.*, 9 F. Supp. 3d 61, 71 (D. Mass. 2014) (Casper, J.) (finding that reliability of CW allegations

were bolstered where former employees either reported directly to the defendants and were

members of the executive leadership team or were at most two-levels removed, and all directly

interacted with the defendants).  No allegations akin to those in *Collier* are present here.

CW1's knowledge is instead based on vague hearsay or speculation.  For

example, CW1 claims that the Individuals knew about issues with declining shelf space, because

CW 1's primary iRobot contact, Michelle McGill, knew about those issues and "passed along"

that information "to their colleagues at iRobot corporate in Massachusetts."  (CCAC ¶ 98).  But

the Complaint does not allege with particularity w*hat* Ms. McGill knew, *who* she passed this

information to and *when*, or *how* that information was contradictory to the challenged statements.

---

[1]     The Opposition's conclusory allegations that CW2 confirmed that CCS's market research
was based on stores "throughout the United States" and that CW1 had *access* to this nationwide
research is unavailing.  (Opp. at 15; CCAC ¶¶ 53, 56.)  The Complaint fails to allege
particularized facts that would support an inference of nationwide knowledge:  CW1 or CW2 are
not alleged to have ever visited stores outside their regions or *read* Reports containing data from
other regions. *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 19 (D. Mass. 2004) (cited at Opp. at 15)
is not instructive because one of the employees in different markets "received an email indicating
that the fraudulent sales practice was company-wide, ordered by [a company] Vice President."

Nor does Plaintiff allege that Ms. McGill reported to any Individual or that she reported to someone who reported to any Individual.  (CCAC ¶ 54.)  CW1 similarly relies on vague hearsay for statements about tariffs.  (*See, e.g.*, *id.* ¶ 175 (claiming to have heard from some other CCS employee that iRobot allegedly instructed employees to tell customers that its stock declined only because of tariffs).)  Similar details are missing: *Who* gave this purported instruction, *when*, *was* any Individual told and *how* does this render any challenged statement false?  Plaintiff's hearsay-plagued allegations fail under the PSLRA.  *In re Vertex Pharm. Inc., Sec. Litig.*, 357 F. Supp. 2d 343, 354 (D. Mass. 2005) (discrediting CW allegations based on multi-layer hearsay).  The remaining CWs also have no basis of knowledge:

- **CW3 worked in IT business analytics** and was responsible for ensuring the transmission of unspecified financial and supply chain data.  (CCAC ¶ 57.)  CW3 provides no basis for the conclusory statement that "it was known internally at iRobot that the additional pressure of tariffs would negatively impact iRobot's sales and market share and that that competition was putting 'price pressure' on iRobot" (*id.* ¶ 155).

- **CW4 was a Country Manager for *Canada***.  CW4 is not alleged to have any firsthand knowledge about iRobot's business in the *United States* and is not alleged to have been part of senior management.  CW4 provides no basis for the claim that "increased competition had a 'huge impact' on iRobot's sales in the *United States* and CW4's opinion that increased inventory and softening sales "was a double whammy" is irrelevant (*id.* ¶ 133).

- **CW5 was a human resources employee** who left iRobot four months before the Class Period began and had no firsthand knowledge of iRobot's financials.  CW5 provides no basis for his claim that iRobot was "feeling the pressure" from increased competition (*id.* ¶ 92).  Contrary to Plaintiff's assertion (Opp. at 12), CW5's pre-Class Period statements are not probative of anything:  iRobot already told investors that it was facing increased competition.

- **CW6 was a software engineer** who alleges that he attended certain "All-Hands Meetings" but could not recall whether competition and tariffs were addressed by "CEO Angle *or another executive*" (*id.* ¶¶ 99, 156 (emphasis added)).  CW6 provides no basis for the claim that the Individuals "were well aware and concerned about the increased competition and how to respond" (*id.*), and the statement that Mr. Angle was "personally involved" in seeking a tariff exemption is unremarkable and in any event public knowledge.  (Br. at 1 n. 2-3 (Contrary to Plaintiff's assertion (Opp. at 3 n.3), Mr. Angle spoke publicly about the potential impact of tariffs as early as August 2018, *see* Br. at 1 n. 2.)

3

3.      ***The Opposition does not dispute (and thus concedes) that the CWs fail to identify any metric in any of the alleged Reports that undercuts any challenged statement about competition, revenue, shelf space or market share.*** (Opp. at 12.)  Plaintiff instead suggests that the CWs need not recount those details.[2]  (*Id.* at 13 citing *Collier*, 9 F. Supp. 3d at 73.)  *Collier* only highlights the inadequacy of the CW allegations.  In *Collier*, a securities fraud case alleging that a company hid rebates from its customers as later revealed in customer audits, this Court found that certain CWs' statements were sufficiently particularized where, for example, a CW identified specific statements made by a specific defendant to the CW and tied them to a specific customer audit.  *Id.* at 72.  By contrast, the CWs here fail to recite any details from any Report or connect them to any challenged statements *when made*.

The Opposition also fails to cure the deficiency of the lone metric alleged – that "by the summer of 2018," iRobot's market share had fallen 10%.  (Opp. at 25.)  That statement is not supported by any particularized facts about how that market share figure was calculated, what the figure represents or whether that market share figure was ever shared with any Individual.  (Br. at 14.)  Nor does Plaintiff tackle the more fundamental problem with the statement: timing.  CW1's statement that the 10% market share drop was "readily apparent internally 'by the summer of 2018'" (Opp. at 25) says nothing about iRobot's market share during the later periods actually addressed in the challenged statements.  (Br. at 24; CCAC ¶¶ 248, 259 (statements about *year-end 2018* and the *first half of 2019*).)  Plaintiff contends that it "strains credulity" to believe that the market share drop "disappeared subsequently in 2019."

---

[2]      The Opposition fails to distinguish Defendants' factually similar cases showing that courts require precisely those facts to be alleged with particularity.  (Opp. at 15 n.11; Br. at 12-13 n.7.); *see Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 267 (D. Mass. 2013) (dismissing securities complaint that failed to specify or quantify alleged diminishing sales figures).

4

(Opp. at 25.)  But market share figures fluctuate, and Plaintiff offers no particularized facts to support an inference that the alleged 10% market share decline "by the summer of 2018" remained static through the first half of 2019.  CW1's lack of knowledge about iRobot's financials further precludes any inference that this 10% market share figure is credible.

> **4.**     ***The Opposition's reliance on CW allegations about weekly sales calls is misplaced because those do not remotely suggest that any Individual was aware of any alleged adverse trends, let alone at the time any challenged statement was made.***  (Br. at 15-16.)

CW1's conclusory allegation that adverse competitive trends and iRobot's "deteriorating market share" were discussed on calls with iRobot's Senior Manager Rob Driscoll and therefore the Individuals must have known about these trends too (Opp. 13-14) is grossly insufficient.  *In re A123 Sys., Inc. Sec. Litig.*, 930 F. Supp. 2d. 278, 285 (D. Mass. 2013) (discrediting allegation that defendant "must have known" of fraud).  The Opposition does not point to any allegation (nor can it) linking Mr. Driscoll's purported knowledge to any challenged statement, or showing that he ever communicated any information to any Individual.  Thus, Plaintiff's efforts to establish "corporate scienter" through Mr. Driscoll's knowledge also fail.  *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) (rejecting corporate scienter where there was "no connective tissue" between employees' knowledge and misstatements).[3]

> **5.**     ***The Opposition's rehash of CW6's and CW3's statements that the Individuals spoke at an unidentified number of "All Hands Meetings" on unspecified dates in which competition and tariffs were "discussed" does not save its claims.***  (Opp. at 14-15.)  Those

---

[3]     Plaintiff's cases suggesting that scienter by management-level employees can be imputed to corporate defendants (Opp. at 14 n.9) are irrelevant because Mr. Driscoll is not alleged to have been a senior executive nor to have been involved in disseminating the challenged statements.

unremarkable and undated allegations are unavailing.  *Coyne*, 943 F. Supp. 2d at 273 (rejecting scienter allegations that defendants attended unspecified meetings where issues were discussed).

6.    ***The Opposition's attempt to rehabilitate CW1's premium-tier and tariff allegations fail.***  The Opposition points to CW1's allegation that some unidentified person instructed him and his colleagues "not to waste their time on promoting iRobot's entry-level models at lower-end stores like Target and Wal-Mart" to support the allegation that iRobot "fundamentally" shifted its strategy to premium-tier products.  (Opp. at 17-18.)  CW1 does not allege who gave the alleged instruction or how such instruction contradicts Mr. Angle's statement discussing iRobot's entry-level products on Amazon.  (*Id.* citing CCAC ¶ 136.)  The Opposition also fails to explain how CW1 would be in any position to know that increased competition caused iRobot's alleged poor financial results.  (Opp. at 18.)

7.    ***The Opposition concedes that the Complaint does not allege a motive to commit fraud (Opp. at 23 n.20), but instead resorts to routinely-rejected circumstantial allegations of knowledge and recklessness that – either individually or collectively – fail to plead a strong inference of scienter.***  *First*, Plaintiff relies on the "core product" theory (Opp. at 18-19), but courts in this district uniformly hold that that theory alone is insufficient to support a strong inference of scienter.  (Br. at 19.)  *Second*, the Opposition argues that the Court may infer scienter based on conclusory allegations that (i) the Individuals had access to and closely monitored contrary competition data; (ii) the Individuals held senior positions within iRobot; and (iii) the nature of the alleged false statements made suggest knowledge.  (Opp. at 19-20).  But those types of allegations (individually or collectively) fail to plead a *strong* inference of scienter.  (Br. at 19-21); *Sanders v. AVEO Pharm., Inc.*, No. C.A. 13-11157-DJC, 2015 WL 1276824, at *10 (D. Mass. Mar. 20, 2015) (Casper, J.) (citation omitted) (rejecting inference of

6

scienter based on nature of statements made, defendant's position and core operations theory in absence of other relevant scienter evidence).  *Third*, the Opposition's conclusory assertions that the timing of Mr. Cerda's and Ms. Dean's resignations were "suspicious" (Opp. at 2, 21) is not enough.[4]  (Br. at 21.)  The Opposition cites no case where a resignation alone supported scienter and the two cases Plaintiff relies on are inapposite.  (Opp. at 21; *Collier*, 9 F. Supp. 3d at 76 (resignation allegations supported by "contemporaneous knowledge of the alleged wrongdoing" and "motive and opportunity"); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012) (resignation allegation supported by GAAP violations and accounting fraud).)

>   **8.      *The Opposition advances three meritless arguments to suggest that this Court should ignore iRobot's repeated risk disclosures that undermine any inference of scienter.***

Plaintiff first seeks to characterize iRobot's disclosures as "partial corrective disclosure[s]," arguing that they understated the "impact" that increased competition had on iRobot's guidance.  (Opp. at 16.)  That self-serving characterization is foreclosed by the disclosures themselves.  (Br. at 4-7, 15; *see also* Ex. B.)  For example, in February 2018, iRobot told investors that it was facing increased competitive pressure from new entrants selling lower-cost RVC *and* that such competition was changing the dynamics of the marketplace and being factored into iRobot's guidance.  (Br. at 5; *see also* Ex. B.)  Plaintiff complains that these disclosures were incomplete because they misled investors to believe that the increased competition "was not significant enough to alter iRobot's aggressive guidance and that iRobot remained 'well-equipped to win' against the competition in 2018." (Opp. at 16.)  Plaintiff essentially criticizes iRobot for issuing guidance that – with the benefit of 20:20 hindsight –

---

[4]      Contrary to Plaintiff's contention (Opp. at 21), the Court may consider the public-record press release (whose authenticity Plaintiff does not dispute) showing that Mr. Cerda became the CEO of SimpliSafe.  *Vertex Pharm. Inc., Sec. Litig.*, 357 F. Supp. 2d at 352 n.4.

turned out to be too optimistic.  But the federal securities laws do not require a company to have

a bleak outlook or to "disparage its own competitive position in the market" where it accurately

reports its financials from which investors could draw their own conclusions.  *Guerra v.

Teradyne Inc.*, No. Civ.A. 01-11789-NG, 2004 WL 1467065, at \*10 (D. Mass. Jan. 16, 2004).

Plaintiff next contends that iRobot's warnings were insufficient because those

risks had already materialized.  (Opp. at 27, 16.)  The Opposition points to iRobot's disclosure

that increased competition "could result in a loss of sales or market share" and argues that that

risk had already come to pass by late 2017 and early 2018.  (*Id.* at 27)  Plaintiff offers no

particularized allegations to support that contention and iRobot's strong financial performance in

2017 and 2018 belies any such inference (Br. at 4-8).  Plaintiff instead asks this Court to blind

itself to iRobot's continued revenue growth during the Class Period, dismissing such growth as a

"red herring."  (Opp. 23 at n.19.)  Not so.  iRobot's publicly-reported revenue figures (which

Plaintiff does not allege were inaccurate) – showing that iRobot achieved *record* revenue growth

in 2017 and *exceeded* full-year revenue expectations in 2018 (consisting of four consecutive

quarters of double-digit U.S. revenue growth) – undercuts Plaintiff's unsupported claim that

iRobot hid that increased competition "eroded iRobot's revenue growth."  (Opp. 23 at n. 19.)[5]

Plaintiff does not explain *how* iRobot's tariff-related disclosures were insufficient, nor can it.

The tariff disclosures were tailored and repeatedly updated throughout the Class Period as iRobot

navigated the dynamic uncertainty around President Trump's unprecedented imposition of

Chinese trade tariffs and their evolving impact on iRobot's business.  (*See* Br. at 7; Ex. B.)

Finally, Plaintiff argues that Defendants' disclosures amount to an inappropriate

---

[5]    *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751,
759 (1st Cir. 2011) (no scienter where company allegedly failed to disclose negative sales trend,
but reported figures showed that the company exceeded sales projections and had record sales).

"truth on the market defense" (Opp. at 16-17), but Defendants are not asserting such a defense. Plaintiff ignores that the First Circuit routinely finds that "[a]ttempts to provide investors with warnings of risks generally weaken the inference of scienter." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys.*, 632 F.3d at 760 (citing cases).  So too here.[6]

> **9.**      ***The Opposition confirms that the challenged statements are not actionable.***[7]

> ***Truthful Statements (Br. at 23-25).***  Plaintiff argues that these are actionable half-truths because they omitted alleged adverse competitive trends.  (Opp. at 24-25.)  The Opposition ignores Defendants' cases showing that courts routinely find that statements about historical performance are not misleading by the alleged failure to disclose present or future trends.  (Br. at 23-24.)  Plaintiff's arguments that iRobot's statements touted its "ability to weather the imposition of tariffs unscathed" or guaranteed that "price increases would not harm Roomba demand" (Opp. at 25-26) are undermined by iRobot's disclosures, for example, that "tariffs may cause us to *increase prices* to our customers which may *reduce demand*, or, if we are unable to increase prices, result in *lowering our margin* on products sold."  (Br. at 6; Ex. B.)

> ***Immaterial Corporate Optimism (Br. at 25-27).***  The Opposition ignores that courts in this district routinely find vague language such as "successful," "good," and "well

---

[6]      Plaintiff's reliance on *In re Acuity Brands, Inc. Sec. Litig.*, C.A. No. 1:18-CV-2140-MHC, 2019 U.S. Dist. LEXIS 231099 (N.D. Ga. Aug. 12, 2019) is misplaced. (Opp. at 16.) There, the court found that the CWs alleged with particularity that the company knew that increased competition was a factor in its decline in growth, and sales were down 5 to 10% year-over-year in certain quarters due to increased competition. *Id.* at *48-50.  No such similar allegations are present here.

[7]      To assist the Court in analyzing the thirty-nine challenged statements in Plaintiff's 371-paragraph Complaint, Defendants submitted a chart identifying why they are not actionable. Plaintiff requests that it not be considered.  (Opp. at 23-24, n. 21.)  That request should be denied. *Mahoney v. Found. Med., Inc.*, 342 F. Supp. 3d 206, 212 (D. Mass. 2018) (finding "helpful" a 45-page exhibit identifying alleged misstatements and arguments).  Plaintiff alternatively asks the Court to consider its Exhibit A, which adds Plaintiff's response to Defendants' chart.  Defendants added a reply to Plaintiff's chart for the Court's convenience.

positioned" as nonactionable corporate optimism.  (Br. at 26 n.14 citing cases; Ex. A.)[8]

   ***Opinion Statements (Br. at 27).***  Contrary to Plaintiff's argument (Opp. at 29), Defendants did not misstate the standard for opinions under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 187-89 (2015), which did not displace the "sincerely held" standard, but just added to it.  *Id.*  Plaintiff's conclusory allegations about alleged adverse competitive trends do not show that the Individuals did not sincerely hold their opinions *or* that they had conflicting information that would have misled a reasonable investor.

   ***Protected Forward-Looking Statements (Br. at 29).***  *First*, contrary to Plaintiff's assertions, the PSLRA safe harbor applies to forward-looking statements even though the statements may contain present facts.  *Coyne*, 943 F. Supp. at 268 ("Considerations of mixed present/future statements do not take forward-looking projections outside the protection of the safe harbor merely because they also imply some present, unstated fact.").  *Second*, iRobot's cautionary language is precisely the sort deemed to be sufficient and not the "vague, generic warnings" that Plaintiff contends.  (Br. at 28-29.)  *See Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 362 (S.D.N.Y. 2019) (warning of intense competition adequate against claim that retailer suffered lower growth due to competition).

## CONCLUSION

   For the reasons above and in the Moving Brief, the Complaint should be dismissed with prejudice.

---

[8] Plaintiff's cases are inapposite. *In re Smith & Wesson Holding Corp. Sec. Litig.*, 604 F. Supp. 2d 332, 342 (D. Mass. 2009) (particularized allegations regarding the falsity of Defendants' statements about demand); *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 337 (D. Mass. 2002) (opinion statement of "competitive advantage" actionable where "Defendants lacked any rational basis upon which to base such a belief"); *Scritchfield v. Paolo*, 274 F. Supp. 2d 163, 167, 176 (D.R.I. 2003) (statement that company was a "dominant" player actionable where it conveyed a comparative connotation).

Dated:  August 3, 2020
       Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Alisha Q. Nanda (BBO #657266)
Rene H. DuBois (BBO #688849)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
rene.dubois@skadden.com

*Counsel for Defendants*
*iRobot Corporation, Colin M. Angle*,
*Alison Dean and Christian Cerda*

11